## WHEELING.

### ADAMS *v.* ALKIRE *et al.*

Submitted June 13, 1882—Decided November 11, 1882.

1. When a person enters upon land, claiming it under a color of title by deed or other writing, he acquires an actual possession to the extent of the boundaries contained in such deed or writing, unless some part of the land is in the possession of some other claimant; and it is immaterial whether such color of title be a good or bad, a legal or an equitable title. (p. 485.)

2. A person enters upon land under a deed describing the land and claiming it under such deed, and which land, at the date of his deed and entry thereon, does not appear to have been granted by the commonwealth, but subsequently thereto, the said land is granted to another person. HELD,

   That from the time the grant issued to such other person the statute of limitations commenced to run in favor of the person who had thus entered upon the land; and, if he continues in the actual possession, after the date of said grant, long enough to bar an entry under said statute, he will acquire a valid title to said land. (p. 485.)

3. It is a well established principle that, in adversary proceedings in a court of equity for the sale of land, nothing but the title

which is vested in the parties to the proceedings can be sold ;
and a deed made under a decree in such proceedings carries
with it only the title of the parties to the suit.   (p. 486.)

4. Where a deed contains a general description of the land conveyed
which can be made certain by proof of the surrounding circum-
stances, or identified by reference to the land itself or other
objects that, more·or less distinctly indicate or determine it,
and such deed also contains courses and distances of the land ;
such general description, if it satisfactorily appears from the
deed itself or any recital, or writing referred to, therein, that it
was the intention of the grantor to convey the land so generally
described, will control, and the courses and distances, in so far
as they limit or differ from such general description, will be
disregarded.   (p. 487.)

Writ of *supersedeas* to a judgment of the circuit court of
the county of Harrison, rendered on the 6th day of June,
1881, in an action in ejectment in the said court then pend-
ing, wherein Daniel J. Adams was plaintiff and John Alkire
and others were defendants, allowed upon the petition of said
defendants.

Hon. A. Brooks Fleming, judge of the second judicial cir-
cuit, rendered the judgment complained of.

The facts of the case are fully stated in the opinion of the
Court.

*Edward Maxwell* for plaintiffs in error.

*Robert White* and *M. T. Frame* for defendant in error
cited the following authorities:   Ror. Jud. Sales § 109; 10
Leigh 317; 9 W. Va. 492; 10 W. Va. 130; 12 W. Va. 1;
2 Best Ev. § 380; 17 Gratt. 312; 2 Const. L. R. 420; 9 Yer.
455; Cowp. 595; 2 Min. Inst. 508–9; 1 Low. Dig. 797; 1
Burr. 60; 2 Smith L. Cas. 324, 396; 1 Gratt. 223; 11 Gratt.
427; 22 Gratt. 392; Acts 1879 ch. 61; 1 N. & McC. 396,
357; 7 Bing. 345; 5 M. & P. 181; 7 Wheat. 107; 7 Pa.
417; 1 Wash. C. C. 204; 1 Paine 457; 7 Wend. 152; 2 H.
and John. 112, 115, 130; 7 W. Va. 475; 25 Gratt. 137;
Code ch. 31 § 34; 10 Gratt. 405.

SNYDER, JUDGE, announced the opinion of the Court:

This is an action of ejectment brought in the circuit

court of Harrison county by Daniel J. Adams against John Alkire to recover a tract of two hundred and seventy-one and one-half acres of land situate in said county on Hall's run, a drain of Ten-Mile creek. The declaration was filed at the November rules, 1879, and describes the land by metes and bounds. At the January term, 1880, the office judgment against the defendant, Alkire, was set aside, and thereupon Benjamin Wilson and the heirs-at-law of M. W. Davis, deceased, were on their motion made defendants with said Alkire, and all the defendants then entered the plea of not guilty, on which issue was joined. A trial by a jury was had at the May term, 1881, and a verdict found for the plaintiff. The defendants moved the court to set aside said verdict upon the ground that it was contrary to the evidence and the facts proved on the trial, which motion the court overruled and the defendants excepted. The court gave judgment on the verdict for the plaintiff, and at the instance of the defendants signed a bill of exceptions containing all the facts proved. From said bill of exceptions the following facts appear: That Weston Twig, by two deeds—the one dated April 10, 1850, and the other October 17, 1853—conveyed to John McDonald two tracts of land on Hall's run in Harrison county, of one hundred and twenty-five and one hundred and forty-five and one-half acres respectively, adjoining each other, the metes and bounds of which are given in said deeds by courses and distances; that said John McDonald by deed, dated October 16, 1865, conveyed said land, estimated to be two hundred and seventy-one and one-half acres, to James F. Cunningham; that said Cunningham failing to pay for said land a suit was instituted by said McDonald in the circuit court of Harrison county against said Cunningham and others to sell the same for the purchase money; that a sale of said two hundred and seventy-one and one-half acres of land was directed, a sale made and confirmed and John J. Davis and M. W. Harrison appointed commissioners to convey the same to David Teter, the purchaser, by decrees entered in said suit; that said commissioners, Davis and Harrison, by deed dated April 14, 1868, conveyed to said David Teter the two hundred and seventy-one and one-half acres of land sold in the said suit and which "said two hundred and

seventy-one and one-half acres of land is bounded and described as follows:" (*Here certain metes and bounds are given in the deed*); that said David Teter and wife by deed dated September 21, 1870, conveyed to the plaintiff, Daniel J. Adams, the said tract of two hundred and seventy-one and one-half acres of land by the same description and metes and bounds as those given in said deed from Davis and Harrison commissioners to the said Teter; that on the 27th day of October, 1877, the plaintiff, Daniel J. Adams, filed his bill in the circuit court of Harrison county against Joshua B. Conway and the heirs-at-law of M. W. Davis, deceased, alleging that there was a mistake in the aforesaid deed from commissioners Davis and Harrison to David Teter and, also, in the deed of September 21, 1870, from said Teter and wife to him, and praying the court to correct said mistake; that the court by a final decree entered in said cause, on December 24, 1878, ordered the correction of the mistake alleged in the bill and appointed Thomas W. Harrison a commissioner to convey to the plaintiff, Daniel J. Adams, the land sold in the suit of *John McDonald* v. *James T. Cunningham et als.* by certain metes and bounds given in the decree, and said decree concludes as follows:  "It is further adjudged, ordered and decreed that this decree is without prejudice to the right of the defendants, or to any right, title or claim that they, or any of them, may have to or upon said land;" that, pursuant to said decree, said Thomas W. Harrison commissioner by deed, dated December 26, 1878, conveyed said land to the plaintiff by the metes and bounds given in the decree.   The foregoing constitutes the paper title of the plaintiff as shown by the record.

The defendant's title is shown to be as follows:   A grant from the commonwealth of Virginia to John S. Hoffman and Benjamin Wilson, dated August 1, 1854, for two thousand three hundred acres of land based on a survey made April 18, 1853; and a deed from said Wilson to M. W. Davis for one undivided half of ninety acres of land, dated May 30, 1873.

It was proved that the defendants, bearing the name Davis, are the heirs-at-law of M. W. Davis, deceased; that the land described and conveyed in the deeds from Twig to McDon-

ald, from McDonald to Cunningham, and from Thomas W. Harrison, commissioner to the plaintiff, all embrace the same land, including the land in controversy; that *the courses and distances* in the deeds from John J. Davis and M. W. Harrison, commissioners to David Teter, and from said Teter to the plaintiff, do not include the land in controversy; that the grant to Hoffman and Wilson and the deed from Wilson to M. W. Davis embrace the land in controversy which is ninety acres; that the plaintiff and those under whom he claims took and held actual possession of the land embraced in the deeds from Twig to McDonald outside of the ninety acres in controversy from the year 1850 to this time; that at the time this action was brought the defendant, Alkire, was in possession of the ninety acres in controversy under a lease from the defendants; that M. W. Davis and his heirs, either by themselves or their tenants, were in the actual possession of the land in controversy from the year 1873, to the time this action was brought, and had said land entered on the assessor's books of Harrison county in the names of Davis and Wilson, or of the heirs of Davis and Wilson, or those claiming under them, and charged with taxes from the year 1873 to 1880, both inclusive, and that said taxes were paid; that the land embraced in the deeds from Twig to McDonald, from McDonald to Cunningham and from Thomas W. Harrison, commissioner to the plaintiff, was not entered on the assessor's books of said county and charged with taxes thereon in the name of John McDonald, James F. Cunningham or David Teter, for any of the years from 1873 to 1880, inclusive; but that Daniel J. Adams for said years was charged on said books with taxes on a tract of two hundred and seventy-one acres of land on Hall's run in said county and that he paid said taxes; and that the ninety acres of land in controversy was wild and unimproved until the year 1873. These were all the facts proved on the trial.

The defendants, who are the plaintiffs in error in this Court, claim that the plaintiff below had neither title or right of possession to the land in controversy, and they found this claim upon the grounds:

*First*—That the plaintiff proved no grant from the commonwealth;

*Second*—That the deed from Thomas W. Harrison commissioner to the plaintiff is a nullity, and that the deeds from John J. Davis and M. W. Harrison commissioner to David Teter and from said Teter to the plaintiff do not convey the ninety acres in controversy; and

*Third*—That the title of the plaintiff, if any he had, became forfeited for non-entry and the non-payment of the taxes on said ninety acres for the years from 1873 to 1880 inclusive.

I will consider these objections in their order.

*First*—Where a person enters upon land claiming it under a color of title by deed or other writing, he acquires an actual possession to the extent of the boundaries contained in such deed or writing, unless some part of the land is in the possession of some other claimant.   *Overton* v. *Davisson,* 1 Gratt. 211.   And it is entirely immaterial whether this color or claim of title be "under a good or bad, a legal or an equitable title."   *Shanks* v. *Lancaster,* 5 Gratt. 110.

It is proved in this case that those under whom the plaintiff claims, were in the actual possession of the land embraced in the deeds from Twig to McDonald and from McDonald to Cunningham from the year 1850, to the year 1867, at least. And while this actual possession did not extend to the land in controversy, still as that land was was included in the boundaries described in said deeds, and there was no other claimant in possession of it during that time, the law extended the possession of those claimants to and gave them by construction actual possession of the land in controversy.   In 1854, the land in controversy was granted by the commonwealth to Hoffman and Wilson.   From the date of this grant the statute of limitations commenced to run in favor of those under whom the plaintiff claims; because, after said grant, the commonwealth no longer had any interest in the land— her title having been transferred to her grantees, and as against them the period of the statute of limitations, as to actions brought after March 27, 1863, was ten years.   Code chap. 104 sec. 5 p. 547.   Consequently, before there was any entry or actual possession of the land in controversy by the defendants—their possession having commenced in 1873— the persons under whom the plaintiff claims had acquired the absolute legal title to the whole of the land embraced in

the said deeds from Twig to McDonald and from McDonald to Cunningham by their actual possession of the same more than ten years.

*Second.*—There can be no doubt that the deed from Thomas W. Harrison commissioner to the plaintiff, made under a decree in the suit of *Daniel J. Adams* v. *Joshua Conway et als.*, did not confer any title to the land therein described upon the plaintiff. If the deed made by commissioners John J. Davis and M. W. Harrison to David Teter, dated April 14, 1868, did not pass the title to the land in controversy to said Teter, then the title thereto remained in James F. Cunningham, to whom it had been conveyed by John McDonald. It is not pretended that Cunningham ever conveyed said land to any one, and as he was not a party to said suit of *Adams* v. *Conway et als.*, no deed made under any decree in said suit could affect his title to the land. *Duvall* v. *Speed*, 1 Md. Ch. Dec. 229; *Allen* v. *Gault*, 27 Pa. St. 473; Rorer on Jud. Sales §§ 379 to 385 and cases cited. Nor can said deed be relied on as an estoppel against the defendants in said suit, the heirs of M. W. Davis, deceased, who are also defendants in this action, because the decree directing the deed to be made expressly orders that it shall be without prejudice to any title or claim of the defendants to said land.

Did the deeds from John J. Davis and M. W. Harrison commissioners to David Teter and from Teter to the plaintiff convey the ninety acres of land in controversy?

In descriptions of lands or questions of boundaries the rule is settled in Virginia and this State, that natural landmarks, marked lines and reputed boundaries will control mere courses and distances or mistaken descriptions in surveys and conveyances. *Dogan* v. *Seekright*, 4 H. & M. 125; *Coles* v. *Wooding*, 2 Pat. & H. 189; *Baker* v. *Seekright*, 1 H. & M. 177; *Smith* v. *Davis*, 4 Gratt. 50.

In *Herbert* v. *Wise*, 3 Call. 239, there was a grant to George Brent for one thousand one hundred and forty-three acres of land which he devised to his son George Brent, jr., who devised four hundred acres thereof, to be first laid off, to his brother, Henry; other four hundred acres to his brother Robert; and to his brother Nicholas the residue of said land containing three hundred and forty-three acres. The execu-

tor of Nicholas conveyed to Ball by deed, in which the above
facts appeared, and the land was described therein as " a cer-
tain parcel or tract of land on Hunting creek, being three
hundred and forty-three acres and bounded as follows:"
(*Here the boundaries are given*).   In ejectment by the plaintiff,
who claimed the said tract described as three hundred and
forty-three acres under Ball, the court, at the instance of the
defendant, directed the jury that "no more land passed under
the said patent, wills and deed to Ball than was compre-
hended in the metes and bonds mentioned in the deed."
On appeal this ruling was reversed and in delivering the
opinion of the court of appeals, Pendleton, President, says:
"To pursue the proper descriptions of our land boundaries,
would render men's titles very precarious not only from the
variations of the compass, but that old surveys were often
inaccurate; and mistakes often made in copying their descrip-
tions into the patents; leaving out lines and putting north
for south and east for west; and in copying those descriptions
into subsequent conveyances.   Whereas the marked trees
upon the land remain invariable, according to which neigh-
bors hold their distinct lands.   On this ground, our juries
have uniformly and wisely never suffered such lines, when
proved to be departed from, because they do not agree
exactly with descriptions in conveyances."   3 Call. 242.

Upon these authorities and the reason of the rule, it seems
to me, that the whole deed must considered, and where a
deed contains a general description of the land conveyed by
it, which can be made certain by proof of the surrounding
circumstances, or identified by reference to the land itself or
other objects that, more or less distinctly, indicate or deter-
mine it, and the same deed also gives courses and distances
of the land; such general description, if it satisfactorily
appears from the deed itself, or any recital or writing referred
to therein, that it was the intention of the grantor to convey
the land thus generally described, will control, and the
courses and distances, in so far as they limit or differ from
such general description, will be disregarded.

Applying this rule to the case at bar, it is apparent that
the deeds from John J. Davis and M. W. Harrison commis-
sioner to David Teter and from Teter and wife to the plain-

tiff, did convey the whole tract of two hundred and seventy-one and a half acres, including the land in controversy. The first of these deeds describes the land as "the two hundred and seventy-one and one-half acres of land in the bill and proceedings mentioned," and conveys it to Teter as "the tract or parcel of two hundred and seventy-one and one-half acres of land hereinbefore mentioned and described." The bill having been lost, it was agreed as a fact, "that the bill was to sell for the purchase-money the same tract of land conveyed in the foregoing deed from John McDonald to James F. Cunningham;" and it was proved that the last mentioned deed embraced and conveyed the land in controversy. And the said deed from Teter and wife to the plaintiff, conveys the tract of land on Hall's run, a drain of Ten-Mile creek and known as the Weston Twig farm, containing two hundred and seventy-one and one-half acres; "it being the same land granted and conveyed to the said David Teter by John J. Davis and M. W. Harrison commissioners, by deed bearing date April 14, 1868." That it was the intention of the grantors in these deeds to convey the tract or parcel of two hundred and seventy-one and one-half acres of land, mentioned and described in the deeds from Twig to McDonald and from McDonald to Teter, does not admit of a reasonable doubt, and therefore, the courses and distances given in them, respectively, so far as they limit or differ from the boundaries contained in said deeds from Twig to McDonald and from McDonald to Cunningham, must be disregarded.

*Third.*—From what has preceded, it is shown that, from September 21, 1870, the date of the deed from David Teter and wife to the plaintiff for the two hundred and seventy-one and one-half acres of land described in the declaration, the plaintiff has been the owner of said land. It was proved on the trial that the plaintiff was charged on the assessor's books with, and paid, the taxes on a tract of two hundred and seventy-one acres of land on Hall's run in Harrison county for the years from 1873 to 1880, both inclusive; it was, therefore, immaterial that said land was not on the assessor's books of said county for said years in the name of John McDonald, James F. Cunningham or David Teter, and, as the lands were properly charged to the owner and

the taxes paid, there was and could be no forfeiture of the title of the plaintiff, who was the owner, during the years aforesaid, or at any other time so far as appears from the record.

It is further claimed by the plaintiff in error that the facts proved show that they have title to the land in controversy. As there is but one title and that is vested in the plaintiff as a part of his two hundred and seventy-one acres, as appears from what has been hereinbefore decided, it follows that the defendants have no title to said land or any part of it.

Having considered all the questions arising upon the record and finding no error in the action and judgment of the circuit court, I am of opinion that said judgment be affirmed with costs to the defendants in error and thirty dollars damages.

THE OTHER JUDGES CONCURRED.

JUDGMENT AFFIRMED.