# CHARLESTON

## STEVENSON *v.* YOHO.

Submitted September 10, 1907.     Decided December 10, 1907.

1. Deeds—*Description—Controlling Effect.*

   A general description of land in a deed which can be made certain by the surrounding circumstances, or identified by reference to the land itself or other objects that, more or less distinctly indicate or determine it, will control a partial and uncertain description by boundaries, if it satisfactorily appear from the terms of the deed, read in the light of the situation of the parties, the subject matter of the deed, and the conduct of the parties, in the negotiation of the contract and their subsequent conduct, respecting the deed and land, that it was the intention of the grantor to convey the same as so generally described. (p. 148.)

2. SAME.

   A deed, executed by a parcener who has made a verbal partition of the land and is in the exclusive possession of part thereof, conveying a portion of the oil and gas therein, and describing the land wherein the oil and gas so conveyed is, as land "owned and controlled" by him, and also in a general, indefinite and incomplete man-

ner as bounded by adjacent lands of other persons, passes title to the oil and gas in that portion assigned to him by the verbal partition. (p. 150.)

3. PARTITION—*Operation and Effect.*

In a suit brought by the grantee in such deed for partition of the oil produced by a well located on a portion of the land, other than that which was assigned to the grantor by the verbal partition, under a claim of title thereto by virtue of such deed, such grantor may, by reason of the implied warranty obtaining between coparceners, defend and resist the demand for partition of the oil from such well. (p. 151.)

Appeal from Circuit Court, Wetzel County.

Bill by Josiah Stevenson against Solomon G. Yoho. Decree for defendant, and plaintiff appeals.

*Affirmed.*

HALL & HALL, for appellant.

M. R. & P. D. MORRIS, for appellees.

POFFENBARGER, JUDGE:

Josiah Stevenson complains of a decree of the circuit court of Wetzel county, made in a suit brought by him against Solomon G. Yoho and others, denying to him participation in the royalty oil of a certain well located on a small tract of land containing about 15 acres, part of a larger tract containing more than 90 acres, which said 15 acre portion is owned or claimed by Mary E. Smith, and the residue by said Yoho. Stevenson's claim to the oil is based upon a deed executed by Yoho and his wife, the construction of which is the sole question presented for decision.

The entire tract of land had formerly belonged to Samuel Yoho, the father of both Solomon G. Yoho and Mary E. Smith. Dying a good many years ago, he left surviving him Katherine Yoho, as his widow, and seven children. Solomon, as early as January, 1887, became the owner, by purchase, of five of the shares which, together with the one he inherited, gave him title to an undivided six-sevenths of the land, leaving the other seventh in his sister, Mary E. Smith. The western line of said tract ran almost directly north and south and the northern line almost directly east and west. The western line ran on a course reversed S. 25° and 20' E., a distance of 78 poles; and thence the southeastern line ran

on a course reversed S. 58° and 40' W. 133 poles. From the southwestern end of this last line, a short line connected with the southern end of the western line. In 1891, Solomon Yoho purchased of S. C. Miller a small oblong tract of 10 acres adjoining the 90 acre tract, on the southeastern side, where the long line above mentioned is, and this 10 acre tract adjoins the large tract at some distance southwest of the eastern corner of the large tract by the abutting of the northwest end thereof on said line. In 1893, a strip containing 37 acres and uniform in width, running across the northern end of the large tract, was laid off by a surveyor and exclusive possession thereof taken by Katherine Yoho, widow, and Mary E. Smith, with the understanding that said 37 acres should be held and possessed by them, as covering in full the dower of said Katherine in the whole tract and the share of Mrs. Smith therein, amounting to about 15 acres. Mrs. Smith's share, according to this understanding and agreement, was located in the eastern end of said strip, the north eastern corner of the entire tract, and was to be bounded on the north and east by lines of the original tract, on the south by said newly established line of the 37 acre portion, and on the west by a line to be located far enough from the east line of the original tract to give her the requisite quantity. On the 16th day of March, 1897, Katherine Yoho and Mrs Smith and her husband executed, to one Furbee, an oil and gas lease on a tract of land, which, by the description as to boundarie s, seems to be said 37 acre tract, although it is described as containing 40 acres more or less. This lease treated the remainder of the tract as being in the ownership of Solomon G. Yoho, for it says the tract leased is bounded on the south by the lands of S. G. Yoho. On the same day, S. G. Yoho and wife executed to Furbee a lease for oil and gas purposes, which, it is claimed, was intended to cover the residue of the 90 acre tract, as well as the adjacent 10 acre tract. This lease purports to cover 70 acres more or less, but, in the description by boundaries, it takes no notice of the 37 acre strip cut off of the northern side, and, on that side, calls for the John R. Gorby tract, lying north of the entire 90 acres. Both leases afterwards came into the ownership of the Kanawha Oil Company and five wells were drilled on the premises, three outside of the 37 acre strip, one on the 37 acre strip, but

not on the portion thereof claimed by Mrs. Smith, and another on the portion claimed by Mrs. Smith, the oil from which is the matter in controversy here.

The deed under which the plaintiff claims one-fourth of the royalty oil from said well, one-thirty-second of the entire production thereof, executed by Solomon G. Yoho and wife to W. S. Stevenson, now deceased, son of the plaintiff, Josiah Stevenson, on the 24th day of May, 1900, for and in consideration of the sum of $315.00, conveyed one-thirty-second of all the oil in the premises described as follows:

"Said land containing ninety (90) acres, more or less, and situated in Center District, Wetzel County, West Virginia and owned and controlled by Solomon J. Yoho and is bounded as follows:

On the North by the lands of John Gorby

On the South by the lands of A. J. Livingston

On the East by the lands of Marcellus Postlethwait

On the West by the lands of C. P. Strosnider and J. W. Moore." The intention to include in this the 10 acre tract appears from the reference in the description thereof to the Marcellus Postlethwait tract adjoining the same, but which did not join the original Yoho tract. That the deed includes this tract is not controverted. The original deed for the 90 acre tract to Samuel Yoho described it as containing 68 acres. The quantity thus called for, taken in connection with the facts and circumstances, known to the parties, is relied upon as important. If it was intended to convey the oil and gas in the whole original tract as well as in the 10 acres the quantity could not have been described, consistently with the original deed, as being less than 78 acres. Mrs. Smith and the widow, at the date of the deed, held and had held, for some years, exclusive possession of the 37 acre tract. Stevenson knew Solomon G. Yoho did not hold the entire original tract, and that he owned or claimed part only of the 37 acre strip, subject to the dower of his mother therein. As evidence, apparent on the face of the deed, of intention not to include the 13 or 15 acres claimed by Mrs. Smith, failure to mention, in the description, the tract of land which adjoins said northeastern corner on the east side thereof, namely, the land of S. C. Miller, is relied upon. The Postlethwait land, called for as the eastern boundary, lies southeast of the 10 acre tract and does not touch the original 90

acre tract anywhere. Furbee took leases on separate portions of the land on the same day and it is under these two leases that the oil in question is produced, but the deed from Yoho to Stevenson makes no mention of these leases. It conveys one-thirty-second of the oil in place, the equivalent of one-fourth of the usual royalty. Stevenson knew Mrs. Smith owned either an undivided one-seventh interest in the land on which he took the lease, or in severalty the supposed equivalent thereof, and her interest was under discussion between him and Yoho at the time the deed was executed. He never claimed any interest in the oil from the well on the land claimed by her nor, in fact, in that from the other well on the 37 acres, and, after taking the deed in question, he contemplated purchase of oil in that tract from Mrs. Smith. Besides, he took a deed calling by quantity for less land than the combined area of the original Yoho tract and the 10 acre tract. To this is to be added the proven circumstance that they reckoned the acreage in their negotiations, and concluded that Mrs. Smith's share would be fifteen acres, and the deed describes the land as land "owned and controlled" by the grantor, which was not at the time true as to the fifteen acres. Much testimony was introduced to show that, by express agreement between Stevenson and Yoho,. the deed was not to cover the interest of Mrs Smith, but this evidence is not admissable. If the deed is ambiguous, in the light of its terms as applied to the subject matter, and we think it may be so regarded, the circumstances and situation of the parties, their conduct in entering into the contract and their subsequent conduct bearing upon its construction, and the peculiar nature and situation of the subject matter, constitute all the evidence admissible on the question of construction. *Newman* v. *Kay,* 57 W. Va. 98; *Winton* v. *McGraw,* 60 W. Va. 98; *Crislip* v. *Cain,* 19 W. Va. 438.

If the deed is ambiguous, as suggested above, we think the circumstances amply sufficient to negative intention to include the land assigned to Mrs. Smith in the partition. Though the line across the 37 acre strip, cutting off her share from the residue of the dower land, was not run until after the deed to Stevenson was executed, the testimony shows that her interest and the extent thereof in acres was fully discussed between the parties. Stevenson knew the grantor did

not either own or claim all of the land, and also the exact number of acres Mrs. Smith claimed. The description by boundaries is very general and somewhat inaccurate, and, as suggested in the brief, there is a significant failure to mention in it the Miller tract, adjoining the northeast corner of the original Yoho tract. Stevenson did not think he had all the land in his deed for he asked one Morris to obtain an option on the 37 acre tract, after he had taken the deed from Yoho, and the quantity called for in his deed was less than the combined area of the 90 and 10 acre tracts.

Perhaps it would be more in conformity with legal principles to say that the deed is not ambiguous and that on its face it calls for land which can be none other than that to which Yoho held the complete equitable title under the parol partition and assignment of dower. The deed conveys oil under land "owned and controlled" by the grantor. He then owned, under the partition, part of the 37 acre tract of which he did not have possession, and he owned completely, and had in his exclusive possession, all of the original tract except the 37 acres. This peculiar language of the deed suggests peculiarity in the subject matter, or rather an intention different from that indicated by a deed conveying land by mere metes and bounds or description as to location. It suggests something within the peculiar knowledge of the parties and with reference to which they contracted, and, taken in connection with the facts and circumstances to which reference has been made, it leaves no doubt as to the intention to limit the grant to oil in the two tracts of land, less the portion assigned to Mrs. Smith. The reasoning and principles stated in *Armstrong* v. *Ross*, 61 W. Va. 38, 55 S. E. 895, fully sustain this construction of the deed. A general description of land in a deed will control a particular description by metes and bounds, when shown by the surrounding circumstances to be more consistent with the intention of the parties. *Adams* v. *Alkire*, 20 W. Va. 480. This conclusion is supplemented and fortified by the further consideration that Stevenson was bound to take notice of the possession of Mrs. Smith. *Ellison* v. *Tortin*, 44 W. Va. 414; *Campbell* v. *Fetterman*, 20 W. Va. 398; *Western Mining &c. Co.* v. *Peytona &c. Co.*, 8 W. Va. 406. As sustaining this conclusion, the rules and principles applied in *Barbour, Stedman and Herod* v. *Tompkins*,

58 W. Va. 572, may be invoked. Point 6 of the syllabus in that case seems to be clearly applicable. It reads as follows: "When the other terms of the description in a deed are equivocal and uncertain as to the identity of the land, and the description by quantity, location and ownership, viewed in the light of admissible extraneous evidence, makes clear the intent of the grantor to convey only the land so described by quantity, location and ownership, the deed is not void for uncertainty, and will be given effect according to the manifest intent as gathered from the whole instrument." Other well settled rules of construction approved and applied in that case, obviously apposite here, read as follows:

"The deed is to be construed with reference to the actual state of the property at the time of its execution and the law assumes that the parties refer to this for a definition of the terms made use of in their deed."

"If there is any land wherein some of the demonstrations are true and some false, only those lands shall pass wherein the demonstrations are true, or, in other words, where the grantor in a deed owns lands which comply with all the particulars of the description, the deed passes title to those lands only, although it may appear that the grantor intended other premises to pass also, which were included within only a part of the description."

"In describing land, quantity controls where other parts of the description are not sufficiently certain in defining the parcel of land intended to be conveyed."

A serious question is injected into the case by the failure of Mrs. Smith to answer the bill. As to both her and her husband, it was taken for confessed, and the defense is made by Solomon G. Yoho only. Has he such interest in the premises as entitles him to defend? We think he has. Having the legal title of the whole tract in his hands, he has made a deed which the grantee interprets as covering the entire tract. The partition between him and Mary E. Smith, at the time this deed was made, was imperfect and incomplete. As regards the legal title, he and Mrs. Smith were still coparceners. They had severed the estate in respect to possession only. Equitably, they held and enjoyed the land in severalty, but legally, they owned it together. Even when partition between coparceners has been fully executed, in a legal

as well as in an equitable sense, there is an implied warranty in favor of each against the others, as long as the relation of privity exists among them, which compels them to make good any loss by failure of title to the part assigned him.   He may call for and obtain a re-partition. *Cain* v. *Brown*, 54 W. Va. 656; *Dingess* v. *Marcum*, 41 W. Va. 757; *Bowers* v. *Dickenson*, 30 W. Va. 709, 717; Rawle, Covenants of Title, § 270; Freeman, Cotenancy, § 533.   It would seem necessarily to follow that in the case of a mere parol partition, no legal title having passed, the duty to make good any loss to one coparcener, occasioned by  the act of  the  other,  would  be  still more imperative.   After the parol partition, Yoho  held  the legal title to six-sevenths of the 15 acre tract in trust for  his sister.   She held the equitable title as to  that portion  with right to call for a conveyance of the legal title.   Having the legal title, Yoho executed a deed which  the  grantee  claims, carries both the legal and equitable title to said  six-sevenths of the 15 acre portion.   The enforcement of the deed according to the grantee's interpretation thereof would undoubtedly enable Mrs. Smith, under the principles above stated, to demand and have a re-partition of the tract of land.   She could set aside the parol partition and proceed as if it had  never been made.   Being then a tenant in common with Yoho, she could treat him and  his grantee as  wrong-doers, guilty of waste, and compell both to account to her jointly, under principles stated in *McNeely* v. *South Penn Oil Co.*, 58 W.  Va. 438.   This being so, Yoho is vitally interested in seeing that the deed executed by him is not used by the grantee so as to defeat the partition made between him and his sister, and subject him to an accounting.

For the resasons stated, the decree will be affirmed.

*Affirmed.*