# CHARLESTON.

NORFOLK & WESTERN RAILWAY COMPANY v. CHRISTIAN *et al.*

Submitted March 11, 1919.   Decided March 25, 1919.

1.  EJECTMENT—*Boundaries—Instruction.*

    A peremptory instruction to the jury in an ejectment suit to find for plaintiff, and motion for a new trial, both predicated on the theory that the boundary line in question had been definitely and surely established by the surveyor with reference to natural land marks, marked lines and reputed boundaries, when the title papers call for no such marks, lines and boundaries, and the evidence of the defendant tends to discredit the existence and location of any such monuments, are rightfully refused and overruled by the trial court.  (p. 705).

2.  DEEDS—*Calls—General Description.*

    Where in the original survey of a right of way for a railroad, one of the calls is N. 70° 28' East 535.7 feet, this particular call in the deed is not overcome and shown to be a mistake by some general description in the deed and the measurement and survey thereof by a subsequent surveyor, when the general description is as consistent with the particular description in the deed as with the theory of mistake of such surveyor.  (p. 705).

3.  EJECTMENT—*Plea of Not Guilty—Issues—Disclaimer.*

    In ejectment the plea of not guilty puts in issue the right and title of the plaintiff to all the land sued for, and if the defendant would limit the issue and avoid error in a general verdict, he should by disclaimer filed in due time disclaim all the land beyond the line or lines to which he claims.  (p. 708).

4.  NEW TRIAL—*As to Part of Issues.*

    In awarding a new trial because of error in such general verdict the court cannot limit the issue to a disclaimer to be filed unless justice demands it and such course can be pursued without confusion, inconvenience and prejudice to any other party to the action.  (p. 708).

5.  EVIDENCE—*Expert Testimony—Admissibility.*

    Opinion evidence of competent experts may be properly called

for when the questions presented are of such a nature that persons generally would not be as competent to pass judgment thereon as such experts. (p. 709).

Error to Circuit Court, McDowell County.

Ejectment by the Norfolk & Western Railway Company against Sarah Christian and others. Verdict for defendants, motion for new trial overruled and plaintiff brings error.

*Reversed, verdict set aside, new trial awarded.*

*Anderson, Strother, Hughes & Curd* and *Theodore W. Reath,* for plaintiff in error.

*Strother, Taylor & Taylor,* for defendants in error.

MILLER, PRESIDENT:

The railway company in November, 1908, sued defendant Christian and nineteen others in ejectment, in the circuit court of McDowell County, to recover so much of the land claimed by them as lay north of the southern line of the original right of way of the Iaeger and Southern Railway Company, to which plaintiff had succeeded in right and title, particularly that portion thereof conveyed to the said Iaeger and Southern Railway Company by Ellen and Preston Beavers by deed dated July 18, 1899. The description of said southern line and the end lines of said right of way as described in the declaration and the deed introduced in evidence is as follows: "Beginning at a point on the division line between the lands of J. G. Watts and said Ellen Beavers distant 40 feet from measured at right angles to the center line of the Iaeger and Southern Railway as now located and running thence parallel to and distant 40 feet from said center line as follows;—By a line curving to the right with a radius of 756.3 feet for a distance of 22.2 feet, S. 50° 46' E. 196.2 feet thence curving to the left with a radius of 676.8 feet for a distance of 148.7 feet S. 63° 22' E. 774.9 feet thence curving to the left with a radius of 915.4 feet for a distance of 449.3 feet; thence still curving to the left with a radius of 1392.3 feet for a distance of 435.3 feet, N. 70° 28' E. 535.7 feet; thence curving to the left with

a radius of 597.3 feet for a distance of 134.1 feet, thence still curving to the left with a radius of 915.4 feet for a distance of 236.0 feet; thence still curving to the left with a radius of 3779.8 feet for a distance of 274.4 feet to a point on the dividing line between the lands of said Ellen Beavers and J. E. Harman or A. D. Beavers, distant 40 feet from measured at right angles to said center line; thence along said division line S. 78° 30' W. 95 feet crossing said center line to another point distant .40 feet measured at right angles to said center line.'' The deed from Beavers and wife for additional description of said right of way referred to a map thereto attached to be taken and read as a part thereof.

There was a plea of ''not guilty'' as to most of the defendants, accompanied with a notice of claims for improvements made by them respectively on their respective portions of the land sued for, and motions to strike out said pleas made by plaintiff were overruled, and other motions were also made and ruled upon not necessary to be considered on the present hearing.

On the 23rd day of October, 1911, when the case was finally called for trial, the record shows that Christian and some twelve other defendants asked and were granted leave to file disclaimers to certain portions of the land sued for, and also to file claims for improvements. But no disclaimers appear to have been actually filed, and immediately following that part of the order allowing the filing of disclaimers it is recited that defendants again for plea say that they are not guilty of unlawfully withholding the premises in the plaintiff's declaration described, and of this they put themselves upon the country, and that the plaintiff did the like, and issue was thereupon joined, and thereupon a jury was empaneled and sworn to try the issue thus joined, and after hearing the evidence, the arguments of counsel and the instructions of the court their verdict was, ''We the jury, upon the issue joined find for the defendant.'' And thereupon plaintiff moved the court to set aside the verdict, and for a new trial, based on several grounds, and the court took time to consider thereof, but owing to the request of counsel on both sides, the motion was not finally disposed of

until February 20, 1917, when it was overruled, and the judgment was that plaintiff take nothing by its action and pay defendants their costs.

The deed from Ellen and Preston Beavers to the Iaeger and Southern Railway Company conveyed with covenants of general warranty, not merely a right of way but the entire estate and interest in the land granted, and the only issue involved was the true location of the southern line thereof as originally located and described in the deed of July 18, 1899, and the map attached thereto. Among the witnesses introduced and relied on by plaintiff to establish the location of this line were Wysor, assistant engineer, an C. S. Spurlock and C. A. Bailey, engineers, who assisted in surveying and locating the original center line of said Railway Company, and Wiltsee, engineer of the plaintiff company, who made a re-survey of the line for the purpose of this suit and also the part of the entire right of way adjoining the land in controversy. These witnesses located said southern boundary line of the original right of way by reference to the hub established by the engineers who ran out and established said center line, a black oak stump at the easterly end and an apple tree near the other end of the line, called for in the original field notes and proved by said Bailey and Spurlock. These monuments were not called for in the deed from Ellen and Preston Beavers nor in any of the title papers under which plaintiff claims, but were called for and referred to in the original field notes of the surveyors, which enabled these witnesses, they said, to locate definitely the true center line called for in said deed.

On the other hand the defendants introduced one Wygal, an engineer employed by E. S. Hood in 1903, to locate said original right of way and to lay out and plat for him with reference thereto certain adjoining lands into town lots, some of which were afterwards conveyed to some of the defendants and now involved in this suit. Wygal said the only data he had from which to locate the said center line was the old map filed in the clerk's office by the Iaeger and Southern Railway Company, a location stake marked with mineral keel, and the cuttings of the brush through the

field and wood, indicating to him the course of the said center line of the right of way. Using this stake as indicating the location of the southern line and running with reference to the point of tangents and point of curves called for, he did the best he could to locate the center line; but on cross-examination he said the map called for no monuments or stakes, that he paid no attention to the profile drawings, a part of the map, and was unable to say positively that he had properly located the said center line, and he did not know that he could have located the line more certainly if he had data calling for timber along the line, and he did not think the original field notes would have helped him to locate the line with more certainty unless the line had been revised when, he said, there would have been monuments locating the principal points, the P. C's. and P. T's; and being further cross-examined with reference to the aid the bench marks on the black oak and the apple tree would have given him in locating this line, he was not certain they would have helped him materially. Other witnesses were examined on behalf of defendants, one of the most important being the witness Litz, who was with Wygal in making the survey for Hood, and corroborated him to some extent at least. Sluss, surveyor, a witness for plaintiff, swore that in 1903, when making a revised location of the railway, he found standing the marked trees and located the center line therefrom, and found still standing the hub in the center line at the extreme west end of the land conveyed by the Beavers. But we need not further detail the evidence on either side, nor do we wish to be understood as indicating any opinion as to the weight or preponderance of the evidence bearing on the issue to be tried by the jury. Our purpose simply has been to recite enough of the evidence to show the application thereto and the materiality of the points of error relied on for reversal.

The first point made is that the trial court erroneously refused plaintiff's instruction Number 1. This was a peremptory instruction telling the jury to find for the plaintiff and to fix the boundary of the land according to the survey made by Wiltsee and others in 1911, in so far as the

land included in said survey is covered by the declaration filed in the case. This point, as well as the second, that the verdict of the jury was contrary to the evidence, is predicated on plaintiff's theory that the center line of the original survey of the Iaeger and Southern Railway had been definitely and unerringly located by Wiltsee and others by reference to fixed monuments and natural objects called for, which could not be disregarded by court or jury. For this proposition counsel rely upon the general rules pertaining to land titles; (a) that a general description in a deed will control a particular description by metes and bounds when shown by the surrounding circumstances to be more consistent with the intention of the parties, citing *Stevenson* v. *Yoho,* 63 W. Va. 144, 149, and *Adams* v. *Alkire,* 20 W. Va. 480; and, (b) that natural land marks, marked lines and reputed boundaries will control courses and distances or mistaken descriptions in surveys and conveyances, as held in *Gwynn* v. *Schwartz,* 32 W. Va. 487, cited and relied on by counsel.

The general description after the particular description in the deed of July 18, 1899, is: "The above description being for a strip of land eighty feet wide (40 feet on each side and parallel to said center line) for a distance of 3177.9 feet measured along said center line from the line of J. G. Watts, through the land of said Ellen Beavers to the land of J. E. Harman or A. D. Beavers, and containing 5.83 acres, more or less." The point which counsel seek to make is that Wiltsee in making his survey found one of the lines of the particular description to be N. 70° 28′ East *635.7 feet* instead of N. 70° 28′ East *535.7 feet* as called for in the deed and plat, and that this general description and the work done by him on the ground in attempting to apply the description to the subject matter of the deed contradict the particular description, to this extent at least which should have controlled the court and jury. We do not see, however, that this general description is any more applicable to the plaintiff's case than to that made by defendants. Of course if the segment of the curve is longer than that called for, it would enlarge the circle and cover more land than is called for in

the deed. On the other hand if the call is correct, it embraced less land and the deed tended to sustain defendants' location of the center line. True, as held in *Adams* v. *Alkire, supra,* and also in *Johnson* v. *Simpson,* 36 N. H. 91, 94, where the description consists of several parts, and some of them are incorrect, if it can be ascertained from those which are correct what was intended to be conveyed, the incorrect parts will be rejected and the instrument be made to take effect as intended. But we cannot see from the record as now presented how or upon what principle it can be said with absolute certainty that the call in the deed is a mistake and that Wiltsee's measurement should prevail over the call in the deed. Wygal in his survey professed to have made it with reference to the original deed and plat and relied on the particular calls, and no monuments or natural objects being called for in the title papers, his opinion was that he had the right to rely on the descriptions in the title papers. True, as he admits, the proper place to begin was the point where the center line as originally surveyed crossed the division line between the lands of J. G. Watts and Ellen Beavers. To locate that line accurately in the absence of any calls for fixed monuments it was necessary to have reference to some reliable data, and the only data Wygal had was that he referred to. As the evidence adduced on the trial tended in some degree at least to discredit the monuments referred to and relied on by Wiltsee and others, it seems to us there was presented a question of fact for the jury, at least on the first instance, whether the line located by Wiltsee or the one run by Wygal and others was in fact the center line of the original survey, and consequently that the court committed no error in its ruling on the instruction or on plaintiff's motion to set aside the verdict, based on the theory that the center line had been correctly located by Wiltsee.

We have perhaps sufficiently indicated our opinion on another point made by plaintiff against the ruling of the court on said instruction and its motion for a new trial, namely that natural objects, marked lines and reputed boundaries should prevail over courses and distances. The

answer is that the deed and plat call for no such distinct and definite monuments. The proposition of *Gwynn* v. *Schwartz*, *supra*, is not controverted; its application to the facts proven is. The theory of the plaintiff is that the black oak, apple tree and hub referred to in the field notes of the original surveyors satisfied the rule of *Gwynn* v. *Schwartz*. But if certainly found, a fact in controversy, and would furnish certain data for the location of the original line, they are nowhere called for in the title papers, and no such monuments being designated or called for in the deed, the question in issue before the jury, depending on the evidence, was where the true center line of the original survey actually existed on the ground.

The next point is the most serious one. The verdict upon the plea of not guilty was general and not limited to the land actually claimed by defendants. The land sued for was covered by several deeds, the title to and location of which was not controverted, except as to that part covered by the deed of July 18, 1899. The plea of not guilty put in issue the right and title of the plaintiff to the whole of the land sued for, and the general verdict would be conclusive upon plaintiff in any subsequent suit between it and the defendants or their privies in title. *Wilson* v. *Braden*, 48 W. Va. 196, 207, and cases cited; *Pardee* v. *Johnston*, 70 W. Va. 347, 355. If the defendants intended to limit the issue, it was a privilege given them, and they should have done so. Not having actually entered their disclaimers, the general verdict in their favor cannot stand, as we decided in *Pardee* v. *Johnston*, just cited. In anticipation of this result, counsel for defendants insist that the new trial should be limited to the one issue of fixing the boundaries of the line to which the defendants may disclaim, and should not open up again the question of the location of the center line of the original survey. For this proposition they invoke the rule announced in *Moss* v. *Railroad Company*, 75 W. Va. 62, and *Fry* v. *Stowers*, 98 Va. 417. But that rule is limited to cases where justice demands it and where it is clear that it can be pursued without confusion, inconvenience and prejudice to the rights of any party to the action. In the Virginia case the

rule was applied where the verdict was for plaintiff for more land than he was shown to be entitled to, by reversing the judgment and remanding the case with leave to plaintiff to release so much of the land recovered as it was clearly proven he was not entitled to, upon terms that if he did not do so the whole of the verdict in his favor should be set aside and a new trial awarded. In the case at bar the jury did not undertake to locate the center line of the original survey nor the southern boundary thereof, and no disclaimers having been filed, the verdict cannot certainly be interpreted as a finding in favor of defendants as to any land except the whole of the tracts sued for.

The next point of error is that the court below erred in denying plaintiff the right to propound and have answered the following questions to the witnesses Bailey and Spurlock, both civil engineers who assisted in making the original survey: "I will ask you to state, in your opinion, and from your knowledge and experience in civil engineering, whether or not in 1911 that old center line could be properly located by competent and capable engineers, with the aid and assistance of the original level and topographical notes taken in making the survey in 1898, the original map made by the ·engineer in charge of that survey, and the deed from Ellen and P. Beavers to the Iaeger and Southern Railway Company of 1899, which I now hand you?" The record shows that both witnesses would have answered in the affirmative.

We think the questions as propounded to these experts and their answers thereto were proper and competent under the facts and circumstances disclosed by the record. It is manifest that the most important fact in controversy was the true location on the ground of the center line of the original right of way. The proposition of counsel opposing these questions is that they call for opinion evidence on a question of fact which laymen are as capable of judging as experts. We cannot accept this view of the subject. Would a layman, a farmer for instance, given the facts assumed in the questions, be as competent as these experts, skilled in the use of the necessary instruments and in the solution of such engineering problems, to say whether from them the

line could be certainly located? We think not. The evidence of at least one of the defendants' expert witnesses tended to show that the facts assumed in the questions would not enable him to locate the line accurately, and this evidence went to the jury. When the questions presented are of such a nature that jurors generally would not be competent to give judgment upon them as would persons of long experience, the opinion of experts is competent. *Delmar Oil Company* v. *Bartlett,* 62 W. Va. 700, 707; *Winding Gulf Colliery Company* v. *Campbell,* 72 W. Va. 449. In the case last cited we decided that the opinion of a surveyor, who has had extensive experience with the lines, corners and boundaries of an ancient patent, as to the identity of one of its corners, which he has examined and tested, is admissible in evidence.

Upon the foregoing considerations we have reached the opinion to reverse the judgment, set aside the verdict and award the plaintiff a new trial.

*Reversed, verdict set aside, new trial awarded.*