S. D. KING *et al.* v. SOUTH PENN OIL COMPANY

(No. 6877)

Submitted February 10, 1931. Decided February 17, 1931.

108

*Harper & Baker,* for plaintiffs.

*Charles Powell, Kemble White, A. F. McCue* and *Harold M. Garrett,* for defendant in error.

MAXWELL, JUDGE:

Plaintiffs complain of an adverse judgment in ejectment.

In 1902, George W. Stockley and Oliva D. Stockley, his wife, executed a power of attorney to George W. McClintic authorizing him to sell and convey for them a tract of 4,000 acres of land in Roane and Clay Counties, excepting, however, from said power of attorney all minerals in and underlying said land, together with specified mining rights. Later the same year, Judge McClintic, acting under said power, sold and conveyed a parcel of 102 acres of the Stockley lands to one L. S. Boggs. Minerals and mining rights were excepted. Through mesne conveyances the plaintiffs have come into possession and ownership of 64 acres of said parcel of 102 acres, excepting minerals and mining rights. In 1907 Oliva D. Stockley, sole devisee of Geo. W. Stockley, deceased, acting through her attorney in fact, W. D. Stockley. executed a lease on the said 4,000 acre tract of land to the Hope Natural Gas Company for oil and gas purposes. Defendant, as assignee of the oil rights under said lease, entered upon the Stockley lands and drilled a large number of oil wells, but at the time of the institution of this suit had not drilled any wells upon the tract of 64 acres involved herein. Incident to the oil development of the said large acreage, the defendant found it convenient and expedient to place some tanks upon the 64 acre tract, into which tanks oil is carried by gravitation through "gathering lines" from certain of the oil wells on the Stockley lands other than the 64 acre tract. The presence of said tanks and the lines extending thereto

from other parcels of the Stockley lands is the cause of plaintiffs' complaint. Plaintiffs concede the right of the defendant to build tanks and structures and lay pipe lines upon the 64 acre tract for the purpose of taking care of oil produced thereon, but they contend that the defendant has no right to place oil tanks and pipe lines upon their lands for the purpose of taking care of oil produced from other portions of the Stockley lands.

In the said power of attorney of George W. Stockley and wife to Judge McClintic there is expressly excepted and not granted to the said attorney the power to sell any minerals "and reasonable rights of ingress and egress and use of sufficient surface of said land to drill or mine for and take away for use said gas, oil, coal or other minerals thereon or under." In the said deed from Judge McClintic to L. S. Boggs there is expressly reserved all minerals in and under said land "and use of sufficient surface of said land to drill or mine for and take away for use said gas, oil, coal or other minerals thereon or under according to the terms of said power of attorney, it being the intention of this conveyance to grant only such part of said lands as said power of attorney gives to said attorney in fact the right to grant and convey."

It is thus seen not only that the Stockleys in making the power of attorney to Judge McClintic excepted all of the minerals underlying the 4,000 acres of land with full rights to produce and carry away the same, but that Judge McClintic in conveying a part of said acreage to Boggs excepted the minerals and fully and explicitly safeguarded the rights of producing and carrying away the minerals just the same as those rights had been safeguarded by the Stockleys in the power of attorney. The minerals and the development rights remained intact as a whole in the Stockleys. Boggs and his successors in title acquired interests in the land subject to the exceptions and reservations explicitly set forth in the power of attorney and conserved with equal clarity in the deed of McClintic, attorney-in-fact, to Boggs. The situation stands upon express contractual basis, made so by the parties, and is bulwarked by the general provision of law that "the owner of the mineral underlying land possesses as incident to

this ownership the right to use the surface in such manner and with such means as would be fairly necessary for the enjoyment of the mineral estate." *Squires* v. *Lafferty*, 95 W. Va. 307. True, the rule quoted applies to the mining and production of minerals from a given tract of land, and does not contemplate the use of such tract in connection with the production of minerals from another and different tract; but in the instant case, the "given tract" must be deemed to be the original Stockley 4,000 acres, and not merely the 64 acres immediately involved in suit. The minerals and mineral production rights were carefully preserved intact by the Stockleys, and the plaintiffs acquired their rights in the 64 acres subject to the Stockley title. It follows that the use by the defendant of a portion of the plaintiffs' 64 acre tract for tanks and pipe lines to take care of oil produced from other portions of the Stockley lands is clearly within the rights expressly excepted and reserved by the Stockleys, and as to which use the plaintiffs have no right to complain as long as it is exercised in a proper manner.

When the plaintiffs concluded the introduction of their evidence, the court sustained a motion of the defendant to direct a verdict for the defendant, and, upon the rendition of such directed verdict by the jury, the court entered judgment that the plaintiffs "take nothing by their declaration filed herein, or by their suit, and that their suit be and it is hereby dismissed, and that the defendant, South Penn Oil Company, a corporation, do go thereof without day," and that the defendant recover costs. What is the effect of this judgment? In the absence of disclaimer by the defendant, do not the verdict and judgment upon a general issue plea to a declaration wherein the plaintiffs assert and claim fee simple title, necessarily operate as an adjudication that the plaintiffs have no title to nor rights in the land, at least in so far as concerns the defendant and its successors? In ejectment "a general verdict and judgment thereon is thereafter conclusive between the parties and their privies in estate." *Wilson* v. *McCoy*, 93 W. Va. 667, 671. In *Railway Co.* v. *Christian*, 83 W. Va. 701, at page 708, the court said: "The plea of not guilty put in issue the right and title of the plaintiff to the

whole of the land sued for, and the general verdict would be conclusive upon plaintiff in any subsequent suit between it and the defendants or their privies in title. *Wilson* v. *Braden,* 48 W. Va. 196, 207, and cases cited; *Pardee* v. *Johnston,,* 70 W. Va. 347, 355. If the defendants intended to limit the issue, it was a privilege given them, and they should have done so. Not having actually entered their disclaimers, the general verdict in their favor cannot stand, as we decided in *Pardee* v. *Johnston,* just cited.'' In the *Pardee-Johnston* case, syllabus 8 reads: ''If a plaintiff in ejectment sues for his entire tract of land, and proves title, and the defendant controverts his title to a part of it only, and does not disclaim as to the residue, a general verdict for the defendant is erroneous. In such case the verdict should be for the plaintiff for so much of his land, at least, as was not actually controverted by defendant.'' And, still more broadly stating the effect of a judgment upon general verdict in ejectment, we have the case of *Curtis* v. *Railway Co.,* 68 W. Va. 762, wherein, syllabus 2 states: ''A judgment in ejectment though by default, is conclusive not only as to the right to possession, but as to the right and title to the land.'' These statements of the law demonstrate the seriousness of the embarrassment which confronts the plaintiffs because of the judgment upon the directed verdict in favor of defendant.

At the conclusion of the introduction of evidence on behalf of the plaintiffs, instead of sustaining defendant's motion for a directed verdict, the court, on its own motion, should have dismissed the plaintiffs' action without prejudice, and have relieved the jury from rendering a verdict. The court might very properly have advised a non-suit, but it would have been a matter of election on the part of the plaintiffs as to whether they would suffer a non-suit or not. It is a settled rule in this jurisdiction and some other jurisdictions, though not universal, that the court may not enforce an involuntary non-suit. *Ross* v. *Gill,* 1 Wash. (Va.) 87; *Thweat* v. *Finch,* 1 Wash. (Va.) 217; *Gunn* v. *Railroad Co.,* 36 W. Va. 165, 176; *Cahill* v. *Insurance Company,* (Mich.) 43 A. M. Dec. 457; 9 Ruling Case Law, p. 203. Illustrative of the application of this rule is the case of *Thornton* v. *Jett,*

1 Wash (Va.) 138, wherein the court said: "The plaintiff having submitted to a non-suit which he was not bound to do, he has deserted his cause and therefore he cannot now avail himself of an objection to the opinion of the court, in awarding it." But, however the rule may be as to involuntary non-suit, there seems to be no valid reason why a trial court may not, in the exercise of sound discretion, require a dismissal without prejudice when the ends of justice seem to require that course. Upon such event the plaintiff can except to the court's action and have the same reviewed by the appellate court on the record as made. A trial court of general jurisdiction is clothed with ample authority to administer justice and ordinarily to deal with emergencies as they arise in order that the administration of the law may not be subverted. Such court therefore should and does have authority to say in substance to a plaintiff: "Your contention is based purely on questions of law and is not sustained by the law; you have no cause of action as the matter now stands; therefore if you do not voluntarily suffer a non-suit, the court will dismiss your suit without prejudice." And especially is this true upon the trial of an action in ejectment, where, because of the peculiar nature of the respective interests of the opposing parties, and the plaintiff asserting a fee simple title to the whole of the property and the defendant making no disclaimer, a verdict on a general issue plea would necessarily be attended with embarrassment to one or the other or both of the parties.

A dismissal without prejudice would have placed the parties in the same situation they were in before the suit was instituted. That is all that either of them has any legal right to require.

We therefore reverse the judgment, set aside the verdict and remand the case with costs in this Court to the plaintiffs and in the trial court to the defendant.

*Reversed and remanded.*