Argued February 5, affirmed July 17, 1968

## STATE OF OREGON, *Respondent, v.*
## HUGH DAVID MICHAEL BREEN,
### *Appellant.*
443 P. 2d 624

*William G. Paulus,* Salem, argued the cause for appellant. With him on the briefs were Paulus and Callaghan, Salem.

*Gary D. Gortmaker,* District Attorney, Salem, argued the cause for respondent. With him on the brief was Don W. Schussler, Assistant District Attorney, Salem.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

DENECKE, J.

The defendant was convicted of arson. He appeals principally upon the ground that his confession was constitutionally inadmissible because he was not mentally capable of understanding the advice given him of his rights as an interrogated accused nor was he mentally capable of making the decision to waive such rights.

■ We agree with the defendant that if an accused is incapable of understanding his constitutional rights, he cannot be interrogated and any incriminating statements made as a result of interrogation are inadmissible. See Annotation, 69 ALR2d 348 (1960), on admission of confessions obtained from the mentally subnormal. The question in the instant case is whether the defendant had sufficient mental capacity to understand relatively abstract concepts such as his constitutional right to remain silent and to consult with an attorney. This question was raised by a motion to suppress.

■ Whether or not the defendant understood is a question of what we today termed in *Ball v. Gladden* "historical fact." The trial court by denying the motion to suppress decided this question of "historical fact" adversely to the defendant. We today held in *Miotke v. Gladden* that we will affirm the finding of the trial court on a question of "historical fact" if there is any evidence to support such finding. There was evidence to support the finding of the trial court in this case.

The defendant was 23 years of age. On his last psychological test, which was in 1965, he received an 80 on the Wechsler Adult Intelligent Scale; a mental age of 12 years. He was lowest in that portion testing for ability to understand abstract concepts. He had been a patient for several years at a state institution for the mentally retarded. At the time he was questioned by the officers he was a resident of and receiving training at the Oregon Vocational Rehabilitation Center, which is located at the Oregon State Hospital.

On the day of the questioning the defendant was picked up in mid-afternoon by two officers who had first obtained permission to do so from the Vocational

Center. He was taken to the interrogation room of the Salem Police Department. According to the officers he was then advised of his rights. According to the officers and the statement signed by the defendant, the advice was given in the following form:

"Q. You have a right to remain silent and not make any statements or answer any of our questions. Do you understand this?

"A. Yes.

[The advice as to his other rights was in similar form.]

"* * * * *

"Q. Do you willingly waive and do without the services of an attorney at this time?

"A. Yes."

The defendant signed a statement about 5:30 p.m. and was returned to the Vocational Center about 15 minutes later.

The defendant filed a motion to suppress the evidence of his confession and testified at the hearing on his motion. He stated that he remembered the officers telling him about his rights, but he testified they did not do so before questioning. A portion of his testimony on this subject is as follows:

"Q Do you recall them stating you have the right to consult with a lawyer and have a lawyer with you during the questioning?

"A No, they didn't say that until afterwards.

"Q Do you recall if they said before they started to talk to you about the fire, if you—questions such as this, if you cannot afford a lawyer the Court will appoint one to represent you, do you understand that?

"A That was said afterwards."

The defendant testified about a second interrogation the next morning:

"Q What did they say to you at the police station?

"A Well, they tried to make me confess to this here Dick Meyer Lumber Yard [another fire], but I didn't say nothing. I says I told you enough about fires so find out the best way you can.

"Q Did they advise you of your rights again at that time?

"A Yes, they finally advised me that I didn't need to say nothing in case I had a lawyer and I said, I am going to end up getting one one way or another.

"Q Did you know you had the right to have the Court appoint you a lawyer?

"A I thought I had to go hire one and then the morning of the 12th [the second interrogation] they said if you don't have any money to hire one the Court will appoint me one."

This testimony was given two months after his interrogation and after he had conferred with an attorney; however, it is evidence to support the trial court's determination that the defendant at the time of his interrogation had sufficient comprehension of his rights to make a valid waiver.

The defendant further contends that the conviction should be reversed because there was no evidence to corroborate the defendant's confession.

■■ ORS 136.540 provides: "* * * nor is a confession only sufficient to warrant his conviction without some other proof that the crime has been committed." This statute requires that the corpus delicti be proved by evidence other than the confession. *State v. Bodi,* 223 Or 486, 492, 354 P2d 831 (1960). In the instant case the arson investigator testified that, based

upon an investigation of the burnt ruins, the fire was started on the outside of the building by some person. This establishes the corpus delicti in arson.

The last assignment of error is based upon the trial court's sustaining an objection to the following question:

"Q Mr. Listella, based upon your long term association with Mr. Breen, your testing of him and your background, would you have an opinion as to whether Mr. Breen would be able to intelligently and knowingly waive his rights when posed questions by police officers?

"MR. SCHUSSLER: Well, I am going to object to that your Honor. I think again that is for the Court to determine.

"THE COURT: I will sustain the objection."

This was asked in the hearing before the court upon the motion to suppress.

██ The objection should have been overruled. Expert opinion testimony is not objectionable upon the ground that the opinion is upon the very issue before the trier of fact. *Welter, Adm'x v. M & M Woodworking Co.,* 216 Or 266, 279, 338 P2d 651 (1959). Sustaining the objection, however, was not prejudicial to the defendant. On direct and cross-examination the same witness was permitted to give his opinion of the defendant's ability to understand the individual components of the comprehensive question to which the objection was sustained, i.e., the witness gave an opinion on the defendant's ability to understand "waiver," what an attorney is or does, the consequences of police interrogation, the defendant's ability to make decisions, etc.

Affirmed.