STATE OF WEST VIRGINIA

*v.*

DELBERT CLINTON MITTER

(No. 14986)

Decided December 15, 1981.

---

*Neil A. Reed* for appellant.

*Chauncey H. Browning,* Attorney General, *Richard T. Rodgers,* Assistant Attorney General, for appellee.

MILLER, JUSTICE:

Delbert C. Mitter appeals his felony convictions of sexual abuse in the first degree and misdemeanor convictions of sexual abuse in the third degree which were entered in the Circuit Court of Preston County. His primary assignment of error is that the trial court permitted an expert witness to testify that the acts committed by Mitter were done for sexual gratification which is one of the key elements in a sexual abuse charge.[1] Other errors alleged are the trial court's failure to grant a severance and the insufficiency of the State's proof in the felony cases because of the failure to prove Mitter's age as alleged in the indictment.

## I.

Mitter was accused of ordering his five stepdaughters to disrobe and rubbing a corncob on which an astringent liniment had been applied between their legs and on their genital areas. Prior to this incident, he had whipped the girls for disobeying him and it was the bruises on the backs of their legs that prompted school authorities to contact a social worker. This action ultimately led to Mitter's arrest on the sexual abuse charges. At trial, he and his wife denied that the incident ever occurred.

It is clear from the trial record that the testimony of the State's expert witness was elicited primarily so that he might give his opinion that the defendant's actions were a form of sexual gratification. The expert, a psychologist, had not interviewed any of the parties to the incident, but

---

[1] *W. Va.* Code, 61-8B-6, 7 and 8, which define sexual abuse in the first, second and third degree, use the term "sexual contact" to define the physical activity involved in sexual abuse. *W. Va.* Code, 61-8B-1(6), defines sexual contact as:

"[A]ny touching of the anus or any part of the sex organs of another person, or the breasts of a female eleven years old or older, where the victim is not married to the actor and the touching is done for the purpose of *gratifying the sexual desire* of either party." [Emphasis added]

gave his opinion based on a hypothetical question which covered the facts surrounding the rubbing incident.[2] The psychologist testified that the motivation "would be most likely to be both sexual and sadistic in content. . . ."

The general theory which permits an expert witness to give an opinion is that the questions presented are of such a technical nature that persons of ordinary intelligence would not possess the expertise to competently pass judgment thereon. Consequently, it is permissible for experts to assist the jury in these situations as we stated in Syllabus Point 5, *Norfolk & Western Railway Co. v. Christian,* 83 W. Va. 701, 99 S.E. 13 (1919):

> "Opinion evidence of competent experts may be properly called for when the questions presented are of such a nature that persons generally would not be as competent to pass judgment thereon as such experts."

*See also, State v. Noe,* 160 W. Va. 10, 230 S.E.2d 826, 830 (1976); *Moore v. Shannondale, Inc.,* 152 W. Va. 549, 165 S.E.2d 113 (1968).

When, however, the subjects being inquired into are within the common knowledge of the jury, expert opinion is ordinarily not admissible. We have expressed this rule in Syllabus Point 7 of *Lawrence's Adm'r v. Hyde,* 77 W. Va. 639, 88 S.E. 45 (1916):

---

[2] Part of the prosecutor's statement to the trial court in regard to utilizing the psychologist was:

"One of the material elements to sustain a conviction is the State is required to prove that the sexual contact was done for the purpose of gratifying the sexual desires of either party to the sexual contact. This we have recognized as being a problem for the State in this particular case; and if we have a psychologist testify, we had hoped that he could hear the testimony of the girls, but if he can't, we would present the facts testified to by the girls to him in a hypothetical manner and ask him to assume that those facts are true, and if those facts are assumed to be true, does he have an opinion as to *what would motivate an individual to commit those acts, what would be the motivating force.*" [Emphasis added]

"Expert opinion evidence concerning a matter as to which the jury are as competent to form an accurate opinion as the witness, is inadmissible."

*See also,* Syllabus Point 2, *Thrasher v. Amere Gas Utilities Co.,* 138 W. Va. 166, 75 S.E.2d 376 (1953), *dismissed,* 347 U.S. 910, 74 S.Ct. 478, 98 L.Ed. 1067 (1954); 31 Am.Jur.2d *Expert and Opinion Evidence* § 21 (1967). This rule is based on the general premise that to permit such testimony invades the province of the jury which is the ultimate fact finder.

Related to the "common knowledge" prohibition against expert testimony is the rule that an expert should not give an opinion on an ultimate issue in the case as it is thought this also invades the province of the jury. 31 Am.Jur.2d *Expert and Opinion Evidence* § 22 (1967); Annot., 38 A.L.R.2d 50 (1950). The precise contours of this rule are often difficult to define and some jurisdictions have retreated from the "ultimate issue" rule.[3] *E.g., State v. Ellis,* 89 N.M. 194, 548 P.2d 1212 (1976); *State v. Breen,* 250 Or. 474, 443 P.2d 624 (1968); *State v. Spry,* 87 S.D. 318, 207 N.W.2d 504 (1973), *overruled on other grounds,* 90 S.D. 198, 240 N.W.2d 84 (1976); *McCormick on Evidence* § 12 (1972 ed.).

As in many matters concerning the rules of evidence, if the inquiry is narrowed to particular evidentiary facts, a more general harmony emerges from what initially appeared to be a variance in opinion. Here, we deal with evidence which was introduced to prove a subjective fact which is an element of intent—whether the defendant's act was done "for the purpose of gratifying [his] sexual

---

[3] Rule 704 of the Federal Rules of Evidence permits an expert to testify concerning an ultimate issue:

"Rule 704. *Opinion on Ultimate Issue*

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

Even after the adoption of these rules on July 1, 1973, the federal courts did not totally abandon the ultimate issue testimonial bar. *E.g., United States v. Ragano,* 476 F.2d 410 (5th Cir. 1973), *appeal after remand,* 520 F.2d 1191 (5th Cir. 1976), *reh. denied,* 526 F.2d 815 (5th Cir. 1976).

desire." *W. Va.* Code, 61-8B-116.[4] Our examination of cases in this area indicates that the general rule is that expert opinion cannot be offered as to the subjective intent of an individual.

In *State v. Hull*, 45 W. Va. 767, 32 S.E. 240 (1899), we held it was error for a physician who had examined a rape victim to give his opinion regarding whether she voluntarily submitted at the time of the incident.[5] A more analogous case is *Koester v. Commonwealth*, 449 S.W.2d 213 (Ky. 1969), where it was held that it was proper to exclude a psychiatrist's opinion in a rape case that the defendant did not have any specific intent to have carnal knowledge. Similar results have been reached in other situations involving the offer of psychiatrists' opinion testimony concerning a defendant's mental state with the exception of the issue of insanity.[6] *E.g., State v. Griffith*, 101 Idaho 163, 610 P.2d 522 (1980), expert precluded from testifying defendant was in fear at time of shooting; *State v. Matthews*, 301 Minn. 133, 221 N.W.2d 563 (1974), expert precluded from giving opinion that defendant was in fear at time he killed victim; *Waye v. Commonwealth*, 219 Va. 683, 251 S.E.2d 202 (1979), *cert. denied*, 442 U.S. 924, 99 S.Ct. 2850, 61 L.Ed.2d 292, expert could not testify that defend-

---

[4] Admittedly, this Code section states "for the purpose of gratifying the sexual desire of either party" (*see*, footnote 1, *supra*), but the State makes no claim that the female victims obtained any sexual gratification.

[5] A related inquiry on which the expert's opinion has often been sought is whether, based on certain evidence, a rape actually occurred. Most courts appear to preclude this type of opinion testimony on the grounds that it concerns an ultimate fact in issue. *E.g., Farley v. State*, 324 So.2d 662 (Fla. App. 1975); *People v. McGillen*, 392 Mich. 278, 220 N.W.2d 689 (1974); *Cartera v. Commonwealth*, 219 Va. 516, 248 S.E.2d 784 (1978).

[6] The insanity defense is premised on the fact that the defendant suffers from some recognized mental disease or defect which prevents him from conforming his actions in accordance with the law. The psychiatric expert is not asked to express an opinion on the defendant's guilt or innocence. Rather, the inquiry is whether the defendant's mental condition falls under the particular legal standard defining insanity. A. S. Goldstein, *The Insanity Defense* pp. 97-105 (1967 ed.).

ant lacked requisite malice and premeditation to kill. *See also, State v. Zimmer,* 198 Kan. 479, 426 P.2d 267 (1967), expert could not offer opinion as to whether defendant had done killing; *Commonwealth v. O'Searo,* 466 Pa. 224, 352 A.2d 30 (1976), psychiatrist could not give an opinion that defendant was testifying truthfully; *Coppola v. Commonwealth,* 220 Va. 243, 257 S.E.2d 797 (1979), *cert. denied,* 444 U.S. 1103, 100 S.Ct. 1069, 62 L.Ed.2d 788, (1980), psychiatrist could not testify that testimony of State's witness could not be believed.[7]

One of the difficult problems that arises from permitting an expert to testify about the intent of the defendant independent of the insanity issue is that criminal intent is an indispensable element of almost every area of our criminal law. As we have previously noted in this case, the term "sexual gratification," which is a required element of sexual abuse, is a subjective state of mind similar to the criminal intent required in other crimes. To permit experts to give opinion testimony, based on hypothetical questions, or based on their examination of the party, on the ultimate issue of criminal intent would, in our view, only serve to unduly confuse and complicate the trial of criminal cases.[8] Each side would have the right to offer opinion testimony on the intent or mental state of a defendent. Moreover, in cases where the crime relates in some manner to the mental state of the victim, this will also be the subject of opinion testimony.[9] Because these

---

[7] In *State v. Harman,* ____ W. Va. ____, 270 S.E.2d 146, 154 (1980), we recognized that a number of courts have held that where a witness has a psychiatric disorder that affects his ability to testify, this disorder may be shown. We also recognized that this is different from a general psychiatric conclusion that a witness is or is not credible.

[8] We spoke to much this same issue of confusion and complication in *State v. Frazier,* 162 W. Va. 602, 252 S.E.2d 39, 48 n. 13 (1979), where we concluded that a polygraph test was too subjective to be admissible at a criminal trial.

[9] *E.g.,* unarmed robbery where fear of bodily harm is an element, *State ex rel. Vandal v. Adams,* 145 W. Va. 566, 115 S.E.2d 489 (1960). Sexual assault charges under W. Va. Code, 61-8B-1, *et seq.,* contain the element of forcible compulsion which includes "placing a person in fear of immediate death or bodily injury...." W. Va. Code, 61-8B-1(1)(b).

intent issues are subjective in nature, it can be expected that the experts will disagree. The consequence will be that the subjective area of intent will no longer be tested by the objective actions and circumstances surrounding the conduct of the party but will be overlayed by varying opinions of experts.

In the final analysis, we believe that such issues are matters which the average juror can understand from the facts surrounding the defendant's conduct at the time the crime was committed based on his own common sense view of human affairs. Much the same point was made in *Collins v. Dravo Contracting Co.*, 114 W. Va. 229, 235, 171 S.E. 757, 759 (1933), where in speaking of intent, we said:

> "In its nature, it is bound to be the existence of a state of mind, and since that state of mind must be arrived at in proof by the establishment of facts extraneous to the mind itself, it seems to us that it is always bound to be a deduction or conclusion from the facts so established.

Again, we stress that we are not dealing here with the insanity issue where expert psychiatric testimony is clearly appropriate. What is involved in this case is the introduction into evidence of the conclusion of an expert on the subjective mental condition of the defendant, i.e. his sexual gratification, which is a key element of the crime of sexual abuse. We conclude that such evidence was improperly admitted and constitutes reversible error.

## II.

The defendant objected at trial to the court's joinder of the five indictments and moved for a severance. The court concluded that joinder was proper based upon Syllabus Point 2 of *State ex rel. Johnson v. Hamilton*, ___ W. Va. ___, 266 S.E.2d 125 (1980), *overruled on other grounds,* ___ W. Va. ___, 274 S.E.2d 440, part of which states:

> "Appropriate protection against multiple trials for offenses arising from the same criminal trans-action requires, in future cases, joinder for trial at the same time of all counts arising out of the same transaction either in a single indictment with

multiple counts or multiple separate indictments;
. . . ."

In the remaining portion of Syllabus Point 2 of *Johnson,* as well as in the opinion, we suggested that this right of consolidation or joinder of offenses for trial arose because of double jeopardy considerations.[10] In our later case of *State ex rel. Watson v. Ferguson,* ___ W. Va. ___, 274 S.E.2d 440 (1980), we determined that the double jeopardy basis for joinder of offenses was too broad a principle and established a procedural joinder rule in Syllabus Point 1, as follows:

> "A defendant shall be charged in the same indictment, in a separate count for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transactions, or are two or more acts or transactions connected together or constituting parts of a common scheme or plan."

We also made it clear in *State ex rel. Watson v. Ferguson, supra,* that we disapproved of *State ex rel. Johnson v. Hamilton, supra,* to the extent it "set the rule as a constitutional holding. . . ." 274 S.E.2d at 444. The procedural joinder rule in *Watson* parallels Rule 8(a) of our new Rules of Criminal Procedure, which became effective Oc-

---

[10] The complete text of Syllabus Point 2 of *State ex rel. Johnson v. Hamilton, supra,* is:

"Appropriate protection against multiple trials for offenses arising from the same criminal transaction requires, in future cases, joinder for trial at the same time of all counts arising out of the same transaction either in a single indictment with multiple counts or multiple separate indictments; however, the defendant may move for severance of separate offenses and waive a future plea of double jeopardy, and if severance is granted by the Court, after defendant's showing of good cause for such severance, the defendant may be tried separately for each separate offense."

The term "consolidation" means the combining of separate indictments in one trial, whereas the term "joinder" refers to the combining of separate offenses in one indictment, using separate counts for each offense.

tober 1, 1981.[11] This same general joinder rule has been our law by virtue of case law and statutes.[12] One of our leading cases on joinder of offenses in a single indictment is *State v. LaRue*, 98 W. Va. 677, 128 S.E. 116 (1925), where we stated in Syllabus Point 3 and 4:

> "3. If all of the offenses charged in one or more counts of an indictment represent but one continuous transaction, it is well settled in this state that they may be so joined as distinct offenses in different counts, and that where properly joined as distinct offenses, unless they appear on the face of the indictment to involve a different transaction, a motion to quash for misjoinder should be overruled.

> "4. A joinder as separate counts in one indictment of several offenses, which though distinct in point of law, yet spring out of substantially the same transaction, cannot operate to the legal prejudice of the accused; and he is not entitled as a matter of right in such case to compel an election."

*See also, State v. Koton*, 157 W. Va. 558, 202 S.E.2d 823 (1974); *State v. Tabet*, 136 W. Va. 239, 67 S.E.2d 326 (1951); 9B Michie's Jurisprudence, *Indictments, Informations and Presentments* § 42 (1977); Note, *Joinder of Crimes in the Same Indictment*, 57 W. Va. L. Rev. 196 (1955).

---

[11] Rule 8(a), West Virginia Rules of Criminal Procedure, provides:

"(a) *Joinder of Offenses.* Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offense charged, whether felonies or misdemeanors or both, are of the same or similar character. All offenses based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan shall be charged in the same indictment or information in a separate count for each offense, whether felonies or misdemeanors or both."

[12] We have a number of statutes that permit the joinder of various crimes in an indictment. For example, *W. Va.* Code, 62-2-24, authorizes joinder of a count for receiving stolen goods or embezzlement with a count for larceny, and also permits a count for false swearing to be joined with a count for perjury, *W. Va.* Code, 61-3-12, permits an indictment for burglary to contain counts for breaking and entering, and entering without breaking.

The general rule at common law is stated in 1 Wharton, *Precedents of Indictments and Pleas* p. 31 (1881 ed.):

> "Offences, though differing from each other, and varying in the punishments authorized to be inflicted for their perpetration, may be included in the same indictment, and the accused tried upon the several charges at the same time, provided the offences be of the same general character, and provided the mode of trial is the same."

We have also recognized the necessity of setting separate offenses in different counts of the indictment. *State v. Winkler*, 142 W. Va. 266, 95 S.E.2d 57 (1957); *State v. Wisman*, 98 W. Va. 250, 126 S.E. 701 (1925).

We did not have occasion in *State ex rel. Watson v. Ferguson, supra,* to discuss the question presented here of the right to consolidate separate indictments for purposes of one trial. Research has not disclosed any case where this Court has discussed this point. It is clear from Rule 13 of our Criminal Rules of Procedure, as well as Rule 13 of the Federal Rules of Criminal Procedure, that consolidation of separate indictments is permitted and is governed by the same test that is utilized for the joinder of offenses under Rule 8(a). 1 Wright, *Federal Practice and Procedure* § 212 (1969). If the offenses are of a same or similar character or arise from the same transaction, joinder is appropriate.[13] We have previously noted that our general rules on joinder of offenses essentially followed what is now Rule 8(a) of our Rules of Criminal Procedure. Thus, it is reasonable to apply by analogy the case law relating to joinder of offenses to consolidation of indictments for trial. Other courts have done so in the absence of Rules of

---

[13] Rule 13 of our Rules of Criminal Procedure, which parallels Rule 13 of the Federal Rules of Criminal Procedure, is:

"The court may order two or more indictments or informations or both to be tried together if the offenses, and the defendants if there is more than one, could have been joined in a single indictment or information except that the court may not order a joint trial of more than one defendant in a felony case if a defendant or the State objects. The procedure shall be the same as if the prosecution were under such single indictment or information."

Criminal Procedure or procedural statutes. *See, e.g., Hall v. State,* 66 So.2d 863 (Fla. 1953); *Wilson v. State,* 245 Ga. 49, 262 S.E.2d 810 (1980); *State v. Collins,* 204 Kan. 55, 460 P.2d 573 (1969); *Williams v. State,* 214 Md. 143, 132 A.2d 605 (1957); *Commonwealth v. Ianello,* 344 Mass. 723, 184 N.E.2d 364 (1962); *Commonwealth v. Rosenthal,* 211 Mass. 50, 97 N.E. 609 (1912); *State v. Parrish,* 45 Or. App. 99, 607 P.2d 778 (1980); *Commonwealth ex rel. Conyers v. Banmiller,* 193 Pa. Super. 368, 165 A.2d 278 (1960); *Commonwealth v. Crandall,* 145 Pa. Super. 353, 21 A.2d 232 (1941), *cert. denied,* 314 U.S. 686, 62 S.Ct. 296, 86 L.Ed. 549; Annot., 59 A.L.R.2d 835 (1958); 53 Am.Jur. *Trial* § 67 (1945).

Thus, we conclude that a trial court may in its discretion order two or more indictments, or informations, or both, to be tried together if the offenses could have been joined in a single indictment or information, that is, the offenses are of the same or similar character or are based on the same act or transaction, or on two or more acts or transactions connected together or constituting a common scheme or plan.

The question of whether a defendant is entitled to obtain a severance where there has been a joinder of different offenses in the same indictment or a consolidation of different indictments for the purpose of one trial depends on several circumstances. In those situations where the offenses charged are interrelated and the prosecutor joins offenses because he is unsure which offense he will be able to prove at trial, severance is not warranted.[14]

---

[14] Our cases hold that where offenses are charged which are of the same general character and such charges are designed to meet different phases of the evidence, the prosecutor cannot be compelled to elect which count he will proceed upon at trial. *State v. Cutlip,* 131 W. Va. 141, 46 S.E.2d 454 (1948); *State v. Shelton,* 78 W. Va. 1, 88 S.E. 454 (1916). As *State v. Koton,* 157 W. Va. 558, 564, 202 S.E.2d 823, 828 (1974), indicates, where the prosecution may be unsure because of conflicting evidence which of several related offenses the defendant committed, it is proper that he set each offense out in a separate count. *Koton* concluded, however, that in certain instances the defendant can only be convicted on one of the offenses.

However, where there are separate offenses arising out of the same transaction, there may be some instances when a defendant's motion for severance should be granted. Our law in this area is not very illuminating since we have failed in the past to distinguish between cases where separate counts are used to cover closely related offenses where the proof is not clear as to which offense has been committed, and those where there are distinct offenses which have occurred as a part of the same transaction. *See, State v. Carter,* \_\_\_ W. Va. \_\_\_, 282 S.E.2d 277, 281 n. 4 (1981).

The reason there has not been much discussion in our case law concerning severance may be due to the fact that it was not until *State ex rel. Johnson v. Hamilton, supra,* that this Court suggested that offenses arising from the same criminal transaction had to be tried in a single trial. Previously, the matter of joinder was left to the option of the prosecutor. The defendant then had the right to attack the joinder through a motion to quash the indictment because of misjoinder or duplicity. 1 Lee, *Criminal Trials in the Virginias* §§ 30-35 §§ 81-84 (1940 ed.).[15]

Courts that have addressed the problem have recognized that joinder or consolidation may prejudice the defendant because the jury may tend to cumulate the evidence of the various offenses and convict the defendant on all offenses charged on the theory he is a bad individual rather than weigh the evidence separately on each offense. From the defense standpoint, trial on multiple offenses may make it difficult to establish separate defenses to individual charges. Furthermore, it may inhibit the defendant's ability to testify on his own behalf if he wishes to testify about some of the charges but not about others. *Cross v. United States,* 335 F.2d 987 (D.C. App. 1964); *Drew v. United States,* 331 F.2d 85 (D.C. App. 1964); 1 Wright, *Federal Practice and Procedure* § 222 (1969). *See*

---

[15] Under our new Rules of Criminal Procedure, adopted October 1, 1981, Rule 14(a) allows relief from joinder "if it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or information or by such joinder for trial together...."

*also, Meade v. State,* 85 So.2d 613 (Fla. 1956); *Hadjis v. Iowa Dist. Court of Linn County,* 275 N.W.2d 763 (Iowa 1979); *Commonwealth v. Slavski,* 245 Mass. 405, 140 N.E. 465 (1926); *Commonwealth v. Tracey,* 137 Pa. Super. 221, 8 A.2d 622 (1939); Annot., 59 A.L.R.2d 835 (1958); 53 Am.Jur. *Trial* § 67 (1945).

We have previously stated that the joinder of related offenses to meet possible variance in the evidence is not ordinarily subject to a severance motion. In those other situations where there has been either a joinder of separate offenses in the same indictment or the consolidation of separate indictments for the purpose of holding a single trial, the question of whether to grant a motion for severance rests in the sound discretion of the trial court.

In the present case, we do not find that the trial court erred in refusing separate trials on these related offenses. Defendant's defense was essentially the same to all charges: that he did not commit the offenses. This case was not one where the defendant could argue that the State's proof was so minimal on a given charge that to permit it to be tried with other charges would result in bolstering the weak charge. Finally, there was no contention made that the defendant desired to testify on some of the charges and not others.[16]

Because of the impermissible testimony of the State's expert witness, we conclude that this case must be reversed and a new trial awarded. Such testimony went to a critical element of the State's case and cannot be deemed harmless error under *State v. Adkins,* 162 W. Va. 815, 261 S.E.2d 55 (1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980). The judgment of the circuit court is

---

[16] The defendant also claims on appeal that actual prejudice did occur at the consolidated trial when the State failed to prove under W. Va. Code, 61-8B-6(a)(3), that the defendant was the age of 43. The State's evidence, however, was that the defendant was in his early 40's. We do not consider this point to have any merit.

therefore reversed and the case is remanded for a new trial.

*Reversed and Remanded.*