355 S.E.2d 921

STATE of West Virginia

v.

Wesley Allen EYE.

No. 17126.

Supreme Court of Appeals of West Virginia.

April 1, 1987.

Steven M. Askin, Askin, Pill, Scales & Burke, Martinsburg, for appellant.

Charles Brown, Atty. Gen., David Johnson, Asst. Atty. Gen., Charleston, for appellee.

BROTHERTON, Justice:

This is an appeal from a jury verdict of the Circuit Court of Pendleton County finding the appellant, Wesley Eye, guilty of burglary, grand larceny, arson, arson with intent to defraud an insurer, and four counts of conspiracy to commit the above offenses. Upon review, we reverse due to prejudicial joinder of offenses and remand to the trial court.

Wesley Eye allegedly was a member a small gang of local thieves. The investigation into his case began when the state police obtained a statement from Joseph Hansen, a part-time member of the gang, that he had burned his own trailer for insurance purposes and participated in a burglary of a residence in Pendleton County. In both cases he implicated Wesley Eye as an accomplice. Hansen did not testify. However, another accomplice, Steven Eckard did testify. Eckard's testimony implicated Eye in the burning of the trailer and in two burglaries.

The most interesting of the three incidents was the burglary and larceny of the Calvin Borror residence. This could be called the case of the musty money. The Borrors ran a local store. Evidently they were suspicious of banks and kept most of their money in a safe at their house. Mr. Eye and his friends allegedly heard of this practice and decided to help themselves to some of the wealth. They broke into the home at a time that they knew that both Mr. and Mrs. Borror would be running the store and opened the safe using a hammer and chisel. The money had been left in the safe so long, it had molded. It was brown and stank with a distinctive musty odor. The thieves took the money and left.

When the crime was discovered, the police put out a notice for people to look for odiferous cash and the appellant's wife was one of those who turned up with the moldy money.

Based on the confession of Joe Hansen, the police obtained a search warrant for Mr. Eye's residence. The police did not find any of the stale sheckels, but a search of an outbuilding uncovered a chisel. The chisel was compared in the laboratory with a microscopic comparison microscope and found to be the same chisel that was used to pry open the safe door.

## I.

The grand jury returned a fifteen-count indictment against Wesley Eye. The counts concerned such diverse matters as burglary, arson, the obstruction of justice, and various related conspiracy counts.

Rule 14(a) of the Rules of Criminal Procedure provides that: "If it appears that a defendant or the State is prejudiced by a joinder of offenses in an indictment or information or by such joinder for trial together, the trial court may order an election or separate trials of the counts...." Mr. Eye claims that he was prejudiced by the State's joinder of offenses in this case. We had occasion to discuss prejudicial join-

der in the case of *State v. Mitter,* 168 W.Va. 531, 285 S.E.2d 376 (1981). In that case the defendant objected to the trial court's joinder of five indictments and moved for a severance. After an examination of the applicable law, we concluded "that a trial court may in its discretion order two or more indictments, or informations, or both, to be tried together if the offenses could have been joined in a single indictment or information, that is, the offenses are of the same or similar character or are based on the same act or transaction, or on two or more acts or transactions connected together or constituting a common scheme or plan." 285 S.E.2d at 382. The offenses in this case were not the same or of similar character. Arson, burglary, and obstruction of justice differ considerably from each other and involve wholly different elements of proof. Further, the prosecution did not present any evidence that these actions were connected together or constituted a common scheme or plan. To the contrary, witnesses showed that the burglary and the arson took place on different nights, with different actors involved, and seemed to be totally unrelated, except for the appellant's participation in both. The trial court committed error in trying these indictments together. *See generally,* Annotation, *Consolidated trial upon several indictments or informations against same accused, over his objection,* 59 A.L.R.2d 841 (1958).

■ "Courts that have addressed the problem have recognized that joinder or consolidation may prejudice the defendant because the jury may tend to cumulate the evidence of various offenses and convict the defendant on all offenses charged on the theory he is a bad individual rather than weigh the evidence separately on each offense." *State v. Mitter,* 285 S.E.2d at 383. In this case we cannot say that the joinder was harmless beyond a reasonable doubt and therefore hold that the error requires a reversal.

## II.

Mr. Eye also claims as error that the trial court limited his cross-examination of a key prosecution witness concerning possible bias. The witness, Steven Eckard, was an alleged accomplice in the rancid revenue robbery. Among other matters, Mr. Eckard had a pending misdemeanor sexual assault charge and grand larceny charges against him in Pendleton and Braxton Counties, West Virginia, both of which were dropped. The trial court did not allow inquiry into these areas on cross-examination.

■ The confrontation clause of the Sixth Amendment to the United States Constitution, coupled with the Fourteenth Amendment, guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. *See State ex rel. Hawks v. Lazaro,* 157 W.Va. 417, 440, 202 S.E.2d 109, 124 (1974); W.Va. Const. Art. III § 14. This right of confrontation means more than simply being allowed to physically confront the witness. *See Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 1109, 39 L.Ed.2d 347 (1974). Indeed, the main purpose of the confrontation is to secure for the defendant the opportunity of cross-examination. 415 U.S. at 315–16, 94 S.Ct. at 1109–10.

The case before us is similar to a recent United States Supreme Court case, *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). In that case, Mr. Van Arsdall was charged with murder. During the cross-examination of a key witness, the defense counsel sought to impeach the witness by questioning him about the dismissal of a criminal charge against him after he had agreed to speak with the prosecutor about the murder. 106 S.Ct. at 1434. The trial court did not allow the line of questioning, but allowed the attorney for Mr. Van Arsdall to question the witness outside the presence of the jury, at which time the witness acknowledged that the charge against him had been dropped in exchange for his promise to speak with the prosecutor about the murder. However, the witness denied that he was ever offered any favors, inducements, promises, or deals concerning that homicide investigation in exchange for his testimony. *Id.* The United States Su-

preme Court found that the trial court's prohibition of all inquiry into the possibility that the witness would be biased as a result of the State's dismissal of his pending charge violated the defendant's rights secured by the confrontation clause. *See id.* at 1435.[1]

In this case, the appellant was not allowed to cross-examine Mr. Eckard as to a possible bias concerning the dropped charges. This was error. Some inquiry should have been allowed to discover if the dropped charges could have affected Mr. Eckard's testimony.

For the above reasons, the decision of the Circuit Court of Pendleton County is reversed, and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

1. The Supreme Court in *Van Arsdall* went on to discuss whether or not the error was prejudicial or harmless. Because we are reversing the case on the misjoinder issue, we decline to address the issue of whether the error in this particular case was prejudicial or harmless.