**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.A., M.A.-1, L.A., and S.A.**

**No. 22-699** (Wood County 21-JA-182, 21-JA-183, 21-JA-184, and 21-JA-185)

**MEMORANDUM DECISION**

Petitioner Father M.A.-2[1] appeals the Circuit Court of Wood County's June 16, 2022, order terminating his parental rights to J.A., M.A.-1, L.A., and S.A.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In August 2021, the DHHR filed a petition alleging that the parents abused and neglected the children after law enforcement responded to a call of unattended children. Upon arriving at the home, officers discovered two of the children, then two and three years old, wandering outside alone, which they had been doing for approximately three hours. The door to the home was open and an officer discovered the mother "asleep on the couch with a glass pipe beside . . . her." According to the DHHR, when petitioner arrived on the scene, he admitted to having abused marijuana and methamphetamine two days prior. Petitioner also admitted that the mother obtained a domestic violence protective order against him two years prior after she took the children to a shelter. The mother corroborated the domestic violence in the home, explaining to the DHHR that petitioner "was abusive to her." The mother was arrested for criminal child neglect at the time of the incident giving rise to the petition. The DHHR attempted a temporary protection plan at petitioner's mother's residence, but immediately expressed concerns about the number of people in the home and past allegations of sexual abuse therein. Further, despite being told he could not be at the residence, petitioner arrived "visibly upset" and had to be asked to leave.

---

[1]Petitioner appears by counsel Michael D. Farnsworth Jr. The West Virginia Department of Health and Human Resources ("DHHR") appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Heather L. Olcott. Counsel Keith White appears as the children's guardian ad litem.

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Because one of the children and petitioner share the same initials, we will refer to them as M.A.-1 and M.A.-2, respectively.

In December 2021, the DHHR filed an amended petition that included allegations that petitioner sexually abused L.A. after the then four-year-old child disclosed sexual abuse to her therapist. Specifically, the child informed the therapist "that her 'real daddy' . . . touched her 'private area' when she was at her grandma's house when she was trying to sleep." The child pointed to her genitalia when asked where she was touched. L.A. also expressed fear of petitioner, believing he would "come through her bedroom window and hurt her." The DHHR alleged that the therapist described the child as exhibiting "alarming behaviors surrounding the disclosure, including nightmares, fear of the dark and sleeping alone, [and] urinating on herself after visits with [petitioner] including urinating twice in the care of the care manager on the way to her foster home from the visit." The DHHR further alleged that the child "refused to go to the restroom at visits with [petitioner], instead requesting the visitation supervisor to help her." Additionally, L.A. pulled her pants down in front of her foster brother and asked him to do the same. When asked why she did this, the child stated that 'daddy did that to her." Following the disclosures to the therapist, L.A. underwent a forensic interview, during which her disclosures remained consistent. The child further clarified that petitioner's touching occurred under her clothes. When asked if petitioner touched her more than once, the child responded, "more times."

During an adjudicatory hearing in January 2022, petitioner objected to the introduction of L.A.'s recorded interview on the basis that the child was not competent to testify. Petitioner's counsel asked that the court view the recording, however, to "get a feel for the child's mental capacity and ability to distinguish right from wrong." After playing the video, petitioner's counsel explained that "if that had been a natural witness on the stand, I would have asked many questions" and went on to attack the child's credibility, pointing to certain perceived inconsistencies. At that time, the court noted that it "did notice [the child] said [petitioner] hit her privates with his hand and then said hit it with a pencil and then said she doesn't know what [petitioner] hit it with." Despite these alleged inconsistencies, the court held a ruling on this objection in abeyance "until hearing further evidence."

The parties reconvened for the continued adjudicatory hearing in March 2022, during which L.A.'s therapist, Elizabeth Frame, testified. According to Ms. Frame, L.A. "reported that [d]addy touched her" and the child "pointed to her genital area." Ms. Frame clarified with the child whether it "was her foster dad or her real dad," and the child "indicated her real dad, the one that she just visits with." The therapist also explained that she asked the child if the touching happened when petitioner was changing her or engaging in other parental responsibilities, and the child indicated it did not. The therapist also discussed the child's behavior issues, such as "nightmares, the urinating, temper tantrums, and self-harming." According to the therapist, the child expressed fear of going places, such as day care, because she was "scared that [d]addy was going to get her," referring to petitioner. Based on the child's disclosures and issues, she was diagnosed with post-traumatic stress disorder. The court also heard testimony from a Child Protective Services ("CPS") worker who responded to the initial incident giving rise to the petition. According to the CPS worker, petitioner informed her that he uses marijuana and had used methamphetamine two days prior to the incident. The worker also explained that petitioner admitted to previously having a domestic violence protective order issued against him after the mother took the children to a shelter. Finally, petitioner testified and denied having admitted to substance abuse when speaking with the CPS worker, although he admitted in his testimony that he abused marijuana "[p]robably about three times a week" and that he had previously abused methamphetamine, although he

claimed he was "a year clean." Despite this claim, petitioner admitted that he tested positive for methamphetamine at a drug screen in December 2021, which petitioner described as a "relapse." He also denied sexually abusing L.A. In fact, petitioner denied having ever "change[d] her diapers or help[ed] her in the bath or anything like that." Finally, petitioner admitted that the children and their mother had to go to a shelter because domestic violence occurred in the home, which resulted in the domestic violence protective order against him. Petitioner was also questioned about a prior incident during which J.A. "had pulled [him] off" the mother.

At the close of evidence, the court ruled on the introduction of L.A.'s recorded interview, finding that the child's statements were "trustworthy, regardless of her age," which the court took into account. According to the court, the way the child "put forth her statements appeared to be clear and free and voluntary, no evidence that these allegations were planted or induced or she was repeating someone else's words." The court found that the statements were being offered to prove a material fact and were more probative on the issue for which they were offered than any other evidence. The court also found that the admission of the statements comported with the general purpose of the Rules of Evidence and the interest of justice and that the other parties were provided with adequate notice to meet the evidence. Turning to adjudication, the court found that the child's statements were credible, especially taken in conjunction with the therapist's corroborating testimony. Further, the court found petitioner's testimony lacked credibility, as he contradicted himself several times. Specifically, the court noted that, as to substance abuse, petitioner "told the workers one thing and later altered that in his own testimony." Further, petitioner first denied domestic violence "but then when confronted with the situation, he did indicate there had been domestic violence in the home." Ultimately, the court found that the DHHR "sustained the burden regarding the alleged sexual touching of the child" and "that there are issues of substance abuse that would impair [petitioner's] ability to properly parent children, and also various issues of domestic violence in the home." Accordingly, the court adjudicated the children as abused and neglected and adjudicated petitioner as an abusing parent.

In May 2022, the matter came on for a dispositional hearing, during which the DHHR introduced into evidence letters from the two older children in which they expressed their wishes to visit with petitioner. According to a DHHR worker, petitioner stopped complying with required drug screens following the adjudicatory hearing. The worker further testified that petitioner had not "made any sort of acknowledgment of wrongdoing" during the proceedings. Petitioner testified again and claimed that after he was adjudicated "it caused [him] to relapse" and cease participation with drug screens. Petitioner admitted he would test positive for marijuana at that time. Further, petitioner continued to deny having sexually abused L.A. Ultimately, the court concluded that petitioner's refusal to acknowledge his sexual abuse of L.A., coupled with his ongoing substance abuse and history of domestic violence, rendered him incapable of remedying the issues of abuse and neglect. The court further found that termination of his parental rights was necessary for the children's best interests, given the need for continuity of care and caregivers and the amount of time necessary to integrate them into a safe and permanent environment. Accordingly, the court terminated petitioner's parental rights and additionally denied post-termination visitation, given

that the "circumstances of finding of sexual abuse" resulted in visits being against the children's best interests.[3] It is from the dispositional order that petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T*., 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, petitioner first argues that it was error for the circuit court to admit L.A.'s recorded interview into evidence. According to petitioner, the interview should have been excluded because it was not trustworthy or more probative than other equivalent evidence.[4] We find these arguments unavailing.

In addressing the admissibility of a child's recorded statement, we have applied the following:

> "The language of Rule 804(b)(5) of the West Virginia Rules of Evidence and its counterpart in Rule 803(24) [which is now set forth in Rule 807(a) through (e)] requires that five general factors must be met in order for hearsay evidence to be admissible under the rules. First and most important is the trustworthiness of the statement, which must be equivalent to the trustworthiness underlying the specific exceptions to the hearsay rule. Second, the statement must be offered to prove a material fact. Third, the statement must be shown to be more probative on the issue for which it is offered than any other evidence the proponent can reasonably procure. Fourth, admission of the statement must comport with the general purpose of the rules of evidence and the interest of justice. Fifth, adequate notice of the statement must be afforded the other party to provide that party a fair opportunity to meet the evidence." Syl. Pt. 5, *State v. Smith*, 178 W.Va. 104, 358 S.E.2d 188 (1987).

Syl. Pt. 9, *In re J.S.*, 233 W. Va. 394, 758 S.E.2d 747 (2014). Because petitioner challenges only two of the relevant factors, it is necessary to address only the court's rulings regarding the statement's trustworthiness and whether the statement was more probative than any other evidence.

---

[3]The court also terminated the mother's parental rights. J.A. has reached the age of majority. The permanency plan for the remaining children is adoption in the current placement.

[4]It must also be noted that on appeal, as in the circuit court, petitioner raises several arguments related to L.A.'s alleged incompetency to testify. While petitioner acknowledges in his brief before this Court that his objection on competency grounds was inappropriate because the child did not testify and should have, instead, been objected to on the basis of trustworthiness, he nonetheless cites extensively on appeal to authorities concerning a child witness's competency to testify. We decline to address any arguments on appeal related to a child witness's competency, as L.A. did not testify below. Instead, we address only those arguments related to the introduction of L.A.'s recorded statement. We do agree with petitioner, however, that his objection on the basis of competency is sufficient to preserve the issue of whether the recorded statement was properly admitted, as petitioner's factual basis for this objection clearly turned on the question of trustworthiness.

4

As set forth above, the circuit court found that the child's statement was trustworthy, given "the way she put forth her statements" in a manner that was "clear and free and voluntary" and in the absence of any "evidence that these allegations were planted or induced or she was repeating someone else's words." Before this Court, petitioner simply disagrees that the child's statement was trustworthy by suggesting that her failure to "respond to attempts to elicit more detail of the incident" calls the trustworthiness into question. He asks, rhetorically, if "the child [is] simply repeating something the child was told to say?" Petitioner asserts that the court previously noted the child was "inconsistent" in reference to the manner in which petitioner touched her, but fails to acknowledge that the court took this information into account when making its final determination. Further, petitioner simply alleges that the evidence was not more probative than the testimony of L.A.'s therapist, but ignores that the child's statement was the most probative while the therapist's testimony simply corroborated the child's assertions. As we have explained,

> The West Virginia Rules of Evidence . . . allocate significant discretion to the trial court in making evidentiary . . . rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary . . . rulings of the circuit court under an abuse of discretion standard.

Syl. Pt. 13, in part, *State v. Rollins*, 233 W. Va. 715, 760 S.E.2d 529 (2014) (citation omitted). Ultimately, we find no abuse of discretion in the circuit court's introduction of the child's recorded statement.

Next, petitioner challenges his adjudication on the basis of sexual abuse by asserting that the evidence was insufficient. As set forth in West Virginia Code § 49-1-201, "sexual abuse" means, in part, "[s]exual intercourse, sexual intrusion, sexual contact, or conduct proscribed by § 61-8[C]-3 of this code, which a parent, guardian, or custodian engages in, attempts to engage in, or knowingly procures another person to engage in, with a child." Further, that statute indicates that "sexual contact" means "sexual contact as that term is defined in § 61-8[B]-1 of this code." Turning to West Virginia Code § 61-8[B]-1(6),

> "[s]exual contact" means any intentional touching, either directly or through clothing, of the breasts, buttocks, anus or any part of the sex organs of another person, or intentional touching of any part of another person's body by the actor's sex organs, where the victim is not married to the actor and the touching is done for the purpose of gratifying the sexual desire of either party.

Further, West Virginia Code § 49-1-601(i) sets forth a clear and convincing standard of proof for adjudication. *See also* Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997). In regard to this standard, we have explained that it is "intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases." *Cramer v. W. Va. Dept. of Highways*, 180 W. Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988) (citation omitted).

5

According to petitioner, the DHHR failed to prove that the touching in question was intentional and that it was done for the sexual gratification of either party. These arguments, however, are unavailing. Importantly, petitioner ignores our prior discussion of the element of sexual gratification, in which we explained that "such issues are matters which the average juror can understand from the facts surrounding the defendant's conduct at the time the crime was committed based on his own common sense view of human affairs." *State v. Mitter*, 168 W. Va. 531, 538, 285 S.E.2d 376, 380 (1981). As the circuit court served as the trier of fact in the instant matter, it is clear that it was permitted to draw inferences as to petitioner's motivation for the touching from the facts surrounding the incident. Before this Court, petitioner cites to L.A.'s description of the incident as petitioner "wiping [her] butt with his hand" in an attempt to assert that the "[L]egislature did not intend sexual contact to include a parent cleaning a child's bottom." What petitioner fails to recognize, however, is that this incident occurred while the child was sleeping. Even more importantly, the child was clear that the touching did not occur while petitioner was changing her, and petitioner admitted during his testimony that he never "change[d] her diapers or help[ed] her in the bath or anything like that." As such, it is clear that the evidence was sufficient to establish that petitioner touched the child for the sexual gratification of one of the parties. Further, petitioner's assertion that there was no evidence the touching was intentional is entirely meritless, as the evidence introduced established that petitioner did not accidentally touch the child. While petitioner argues that the circuit court failed to make sufficient findings of fact to support his adjudication, the court clearly found that the DHHR met the necessary burden of proof to establish sexual contact. Accordingly, we find that the circuit court did not err in adjudicating petitioner of sexual abuse.

Next, petitioner challenges his adjudication on the grounds of substance abuse and domestic violence.[5] Specifically, petitioner argues that the DHHR failed to present evidence that he engaged in substance abuse or domestic violence at the time the petition was filed or otherwise establish that these issues harmed or threatened the children. We find these arguments to be without merit. According to the evidence, the DHHR established that petitioner admitted to having abused marijuana and methamphetamine two days prior to the children's removal. Additionally, he acknowledged that the mother previously took the children to a shelter and obtained a protective order against him as a result of domestic violence. The circuit court rejected petitioner's explanations, finding that they lacked credibility. This is a determination we refuse to disturb on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely

---

[5]In support of this assignment of error, petitioner sets forth several arguments concerning the sufficiency of the petition. However, petitioner fails to include any citation to the record to demonstrate that he objected to the petition's contents. Instead, petitioner cites to objections concerning the introduction of certain testimony at the adjudicatory hearing and his comments during argument at adjudication where he refers to the petition as "questionable." Because petitioner has failed to comply with the applicable rules, we refuse to address any argument concerning the petition's sufficiency. *See* W. Va. R. App. P. 10(c)(7) ("The argument [in a petitioner's brief] must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The . . . Supreme Court may disregard errors that are not adequately supported by specific references to the record on appeal.").

situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Further, this Court recently addressed a parent's drug use at a time when a child was in their custody and reiterated that

> "because the positive drug screen result constituted clear and convincing evidence of [the father's] ingestion of methamphetamine, the circuit court did not err by adjudicating [him] as abusive and neglectful on this basis[,]" and "the circuit court needed only to rely on petitioner's recent drug abuse to both adjudicate him as an abusing parent and later to terminate his parental rights."

*In re S.C.*, -- W. Va. --, -- S.E.2d --, 2023 WL 4013444, at *5 (2023) (citations omitted). Petitioner's claim that he never used drugs at the mother's home is inconsequential, as petitioner retained custody of the children at times when he admitted to substance abuse. Finally, petitioner's claim that the domestic violence was remote cannot entitle him to relief, as this condition clearly presented an ongoing threat to the children's welfare. *See* W. Va. Code § 49-1-201 (providing that both an "abused child" and a "neglected child" are children who are *threatened* by a parent's conduct). Accordingly, we find no error in the circuit court's adjudication of petitioner on these grounds. We also note that to the extent petitioner argues it was error to terminate his parental rights upon any of the three grounds for which he was adjudicated because he claims there was insufficient evidence to support his adjudication, we disagree. There was more than sufficient evidence to support petitioner's adjudication.

Finally, petitioner argues that it was error to deny him post-termination visitation with J.A. and M.A-1. Specifically, petitioner cites these children's advanced ages, both being over the age of fourteen, and their express desire to have contact with petitioner. As we have explained,

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). The circuit court correctly considered the children's wishes but was not bound by them. Instead, the court appropriately denied post-termination visitation between the older children and petitioner on the basis that the egregious nature of his conduct rendered continued visits contrary to the children's best interests.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 16, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: September 20, 2023


**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn