**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **H.P.**

**No. 24-392** (Mineral County CC-29-2023-JA-11)

**MEMORANDUM DECISION**

Petitioner Father M.P.[1] appeals the Circuit Court of Mineral County's June 7, 2024, order terminating his parental rights to H.P., arguing that the circuit court erred in adjudicating him of sexual abuse.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The proceedings below began in February 2023, when the DHS filed an abuse and neglect petition alleging that three children, including H.P., were abused and neglected by their biological mother.[3] At that time, there were no allegations against the petitioner. In December 2023, the DHS filed a second amended petition alleging that the petitioner sexually abused H.P. after the then-eight-year-old child disclosed to her therapist that the petitioner touched her in a sexual manner, including "us[ing] his fingers to touch her vagina." According to the therapist, H.P. disclosed an incident where the petitioner "was rubbing her bottom" and "[h]is fingers were reportedly near her private area causing her to feel 'grossed out.'"

The court conducted an adjudicatory hearing in April 2024, where it heard testimony from a Child Protective Services ("CPS") worker, H.P.'s foster mother, H.P.'s therapist, and the petitioner. The CPS worker recounted receiving a phone call from the foster agency responsible

---

[1] The petitioner appears by counsel Jason T. Gain. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Lee Niezgoda. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Lauren M. Wilson appears as the child's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For the purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The other children are not at issue in this appeal.

1

for H.P.'s care regarding H.P.'s disclosures to her therapist and requesting a written report from the therapist to explain the allegations. When questioned by the petitioner's counsel, the CPS worker explained that H.P. did not have a Child Advocacy Center ("CAC") interview following the disclosure because she had a regular therapist and, as she had already participated in two CAC interviews as part of the proceedings involving her mother, there were concerns that undergoing a third CAC interview may be traumatic. H.P.'s foster mother observed that, following a visit with the petitioner in September 2023, H.P. acted out sexually with dolls and her foster sister. The foster mother also reported that H.P. became extremely nervous and broke out in hives during a phone call with the petitioner in November 2023. Following this phone call, H.P. reported being nervous after the petitioner discussed purchasing furniture and disclosed that "he would rub her crotch" when they laid together on the couch and that she would try to get away from him.

After being qualified as an expert in child psychology, H.P.'s therapist testified regarding her therapy sessions with the child. The therapist reported seeing H.P. over forty times since December 2022. The therapist's letters showed that H.P. regularly exhibited anxious behavior before and after visitation with the petitioner and consistently expressed a desire against returning to the petitioner's custody. H.P. indicated to the therapist that the petitioner "reminded her of all the bad stuff that happened when she was living at home." The therapist also testified that H.P. discussed the November 2023 phone call and that it made her remember an incident were the petitioner touched her inappropriately. The therapist opined that H.P.'s behavior was consistent with that of a sexually abused child and that H.P.'s condition had dramatically improved since her initial removal in February 2023. The petitioner denied the allegations, stating that H.P. had never expressed fear of him, "was getting mixed up" about what happened, and was being misled.

At the conclusion of the testimony, the circuit court found clear and convincing evidence that the petitioner sexually abused H.P. based on her repeated consistent statements that the petitioner inappropriately touched her. The court further found that the child "did not misunderstand the sexual contact" and had an obvious physical reaction upon being reminded of the abuse. As a result, the court adjudicated H.P. as an abused child and the petitioner as an abusive parent. Because the petitioner's arguments on appeal relate to the court's adjudicatory ruling, it is sufficient to note that the court terminated the petitioner's parental rights at a dispositional hearing held in May 2024.[4] The petitioner appealed this matter following entry of the court's dispositional order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). The petitioner argues that the circuit court erroneously adjudicated him of sexually abusing H.P. upon insufficient evidence. As we have held, "[West Virginia Code § 49-4-601(i)], requires the [DHS], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].'" Syl. Pt. 1, in part, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (quoting Syl. Pt. 1, in part, *In re S.C.*, 168 W. Va. 366, 284 S.E.2d 867 (1981)). "Clear and convincing evidence means that more than a mere scintilla of evidence has been presented to establish the

---

[4] The mother's parental rights were also terminated. The permanency plan for H.P. is adoption in her current placement.

veracity of the allegations of abuse and/or neglect, but it does not impose as exacting an evidentiary burden as criminal proceedings which generally require proof beyond a reasonable doubt." *In re A.M.*, 243 W. Va. 593, 598, 849 S.E.2d 371, 376 (2020).

Our review establishes that the circuit court had sufficient evidence to adjudicate the petitioner. Upon hearing testimony from H.P.'s foster mother and therapist, the court found that H.P.'s disclosures of sexual abuse were consistent and credible. Although the petitioner asserts that discrepancies between H.P.'s disclosures to her foster mother and therapist, including statements regarding her attire and conduct regarding the sexual abuse, rendered them unreliable, the circuit court heard these arguments below and weighed the evidence accordingly. We will not disturb the court's credibility determination on appeal. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). The court considered the totality of the evidence, including testimony regarding H.P.'s disclosures, testimony as to the November 2023 phone call and H.P.'s physical reactions thereto, and the therapist's testimony that H.P.'s behavior was consistent with that of a child who has been sexually abused.[5]

In further support of his argument, the petitioner asserts that the evidence was insufficient because the allegations against him did not state that the touching was made for sexual gratification. Under West Virginia Code § 49-1-201, "sexual abuse" includes "sexual contact . . . as that term is defined in § 61-8B-1 of this code." As a result, "sexual contact" is defined, in relevant part, as "any intentional touching, either directly or through clothing, of the breasts, buttocks, anus, or any part of the sex organs of another person . . . done for the purpose of gratifying the sexual desire of either party." *Id.* § 61-8B-1(5). This Court has previously observed that the element of sexual gratification is a "matter[] which the average juror can understand from the facts surrounding the defendant's conduct at the time the crime was committed based on his [or her] own common sense view of human affairs." *State v. Mitter*, 168 W. Va. 531, 538, 285 S.E.2d 376, 380 (1981). As the circuit court served as the trier of fact in the instant matter, it is clear that it was permitted to draw inferences as to petitioner's motivation for the touching from the facts surrounding the incident. Further, while the petitioner argues on appeal that "[t]here are a myriad of reasons why a parent might touch a young child's buttocks," the record contains no evidence that the touching was done for anything other than sexual gratification based on the child's consistent disclosures. As the record supports the circuit court's finding that clear and convincing

---

[5] The petitioner also argues that the DHS failed to properly investigate the allegations against him insofar as it failed to obtain a CAC interview of H.P. or move for an in camera interview. However, the petitioner fails to comply with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure in that his brief does not "include[] citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal." The lone citation the petitioner includes regarding this allegation cites to the second amended petition where the DHS requested that visitation stop "until further investigation of the allegations can be conducted." This is simply insufficient to preserve this issue for review, as the petitioner has failed to cite to any ruling from the circuit court or, in fact, establish that these issues were raised below. Given that Rule 10(c)(7) permits this Court to "disregard errors that are not adequately supported by specific references to the record on appeal," we refuse to address these arguments.

3

evidence established that the petitioner sexually abused H.P., we conclude that the petitioner is entitled to no relief.[6]

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 7, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: May 13, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn

**DISSENTING**:

Justice Charles S. Trump IV

---

[6] In support of his assignment of error, the petitioner also alleges that the circuit court erred in adjudicating him of sexual abuse based on allegations not contained in the second amended petition insofar as the court found that he "touched [H.P.'s] butt and put his fingers near" her genitals instead of finding that he actually touched her genitals, as alleged in the petition. However, in doing so, the petitioner ignores that the second amended petition also states that he "touched [H.P.] in a sexual manner." Further, the petitioner's implicit position that a circuit court may not consider evidence of sexual abuse outside of the literal allegations of the petition ignores this Court's holding that "facts developed after the filing of the petition, or amended petition, may be considered in evaluating the conditions which existed at the time of the filing of the petition or amended petition." *In re Brandon Lee B.*, 211 W. Va. 587, 590, 567 S.E.2d 597, 600 (2001). Contrary to the petitioner's argument, the circuit court was permitted to consider relevant evidence relating to whether he sexually abused H.P. As such, the petitioner's argument is without merit.

4